## BUCKINGHAM V. HARRIS.

1. A real estate broker is entitled to his commission when he has procured a party ready to purchase on the owner's terms, though he has not made a binding contract for the sale of the real estate with such person.
2. In an action by a real estate broker for his commission, it was shown that he procured a purchaser who was ready and willing to pay the price set upon the land in the broker's hands for sale by the owner thereof, and that the only reason the owner would not sell was because the commission asked by the broker, being the same provided by his contract with the owner, was more than the owner wished to pay, and that the owner had concluded to hold for a higher price.   *Held,* that the broker had performed his part, and was entitled to his commission.
3. It is not error to admit evidence of the value of services performed by a real estate broker in corroboration of his statement as to the express agreement for such services, and to support an allegation of the express agreement contained in the complaint.
4. An instruction that conduct which imputes bad faith upon the part of an agent to sell real estate must be shown by the party claiming it; an instruction that the burden rests upon him to prove such conduct is not error.
5. The admission in rebuttal of evidence which has been shown in chief, or which, more properly, should have been introduced in chief, is not error, as it is a matter within the discretion of the court.

*Appeal from District Court, Larimer County.*

AN action brought by Jesse Harris to recover his commission as a real estate broker, claimed to have been

earned by finding a purchaser for land belonging to Charles G. Buckingham, defendant.

Messrs. DUNNING and HAYNES, for appellant.

Messrs. RHODES and LOVE and E. A. BALLARD, for appellee.

STALLCUP, C. Appellee was plaintiff below, and recovered judgment. The questions presented for consideration by the twenty errors assigned for the reversal thereof may be arranged as follows: *First.* Was the evidence sufficient to warrant the verdict and judgment? *Second.* Was there error in the instructions to the jury given by the court, or in the refusal to give those. requested by appellant? *Third.* Did the court err to the prejudice of the appellant in the rulings on the introduction of evidence at the trial?

First, to the evidence. As to the employment of appellee to sell this four hundred and eighty acre tract of land, the appellee's evidence is direct to that effect. It is corroborated by the testimony of the witness Norvell, and the acts of appellee in working up a purchaser for the same, and in a measure is conceded by appellant. So, from the whole evidence, the jury was warranted in finding that the appellant, desiring to sell his land, had employed the appellee, a real estate broker, to procure him a purchaser at a certain price per acre, on terms stated, for which service he had agreed to pay him a certain commission.

As to appellee's performance of his part of the undertaking, it is shown by the evidence that appellee did procure a purchaser in Mr. Rhodes, who was willing, anxious and able to take the land on the terms given by the appellant, viz., $40 per acre, subject to the lease upon it,— one-third cash, balance in one and two years, secured, etc. The evidence discloses but one reason for not consummating the sale; that was, the refusal on the part of

appellant to complete the sale on his part.   The only reasons given for this refusal were:   *First*, that appellee would not accept for his commission two and one-half per cent. on the amount of the sale; and, *second*, that appellant had concluded to hold the land for a higher price.   As to the commission or compensation appellee was to receive for his services in procuring a purchaser, the evidence for appellee seems conclusive that it was to be five per cent.   That is the amount stated by appellee to appellant at the time of the employment, and then tacitly acquiesced in by appellant, and afterwards, during negotiations for sale, was spoken of by appellant as the understood rate; so that the contract of employment, and the performance thereof by appellee, are shown by the evidence for appellee.   There was some conflict in the evidence as between appellant and appellee and his witnesses; but the jury's verdict settled that in favor of appellee, and we accordingly accept the facts.   From these conclusions it follows that appellee performed his part of the undertaking, and is entitled to his commission, the same as if the sale had been completed.   In the case of *Doty v. Miller*, 43 Barb. 529, the law is stated that a broker or agent who undertakes to sell property for another for a certain commission, when he finds a purchaser willing to purchase at the price, has earned and can recover his commission, though the sale was never completed, if the failure to complete the same was in consequence of a defect of title, and without any fault of the broker or agent.   In the case of *Delaplaine v. Turnley*, 44 Wis. 31, the law is stated that if a broker, employed to sell property at a price satisfactory to his principal, produces a party ready to make the purchase at a satisfactory price, or to make an exchange satisfactory to the principal, the latter cannot relieve himself from liability to the broker for commission by a capricious refusal to consummate the sale.   In the case of *Moses v. Bierling*, 31 N. Y. 462, the law is stated that,

until the broker has faithfully discharged the obligation assumed in the contract, he is not entitled to the agreed commission; that a broker employed to make a sale is entitled to his commission when he produces a party ready to make the purchase, and the principal cannot relieve himself from liability by a capricious refusal to consummate the sale, or by a voluntary act of his own disabling him from the performance. In the case of *Hart v. Hoffman*, 44 How. Pr. 168, the law is stated that where a broker, employed to sell real estate, procures a party willing to purchase on the owner's terms, and the owner refuses to convey to the party so procured, the law will presume, in the absence of evidence to the contrary, that the person so procured was solvent and pecuniarily able to perform the contract he offered to make.

As to the instructions given and denied. The following were the instructions given at the request of appellee, and excepted to by appellant: "*First.* If the principal rejects the purchaser, and the broker claims his commission, he (the broker) must show that the person furnished by him (the broker) to make the purchase was willing to accept the offer precisely as made by the principal, and that he was an eligible purchaser, and such a one as the principal was bound in good faith, as between himself and the broker, to accept. *Second.* When an agent or broker in good faith has produced a purchaser who is acceptable to the owner, and able and willing to purchase on terms satisfactory to the owner, or as offered by the owner, he has performed his duty; and if, from any failure of the owner to enter into a binding contract, the sale is not completed, the agent may recover his commission." There is no error in these instructions, as they are in accord with the law applicable to the case as shown by the cases herein cited, and *Finnerty v. Fritz*, 5 Colo. 174; *Smith v. Fairchild*, 7 Colo. 510.

The following instruction was asked on the part of appellant: "If the jury believe from the evidence that the

plaintiff was authorized by the defendant to negotiate a sale of the premises in question upon certain terms, and the plaintiff, either knowing or having reason to believe that he could obtain a purchaser at those terms, sought to induce the defendant to accept a less price than that defendant had so proposed, the plaintiff by such conduct forfeits the right to any commission," — which the court gave with the following modification: "But the burden of proof in this matter of defense is upon the defendant," — to which modification the appellant excepted. We see no error in this modification. The charge imputes bad faith in some way, and thereby an avoidance of liability. Bad faith and fraud are not presumed. To defeat a liability thereby, they must be shown, and by him who so seeks to defeat the liability.

The following instruction was requested by appellant: "The jury are instructed that a broker is not entitled to a commission until he has completed a valid contract of sale, binding upon both the vendor and vendee; and if you believe from the evidence that no contract in writing or otherwise had been made, whereby the defendant could have enforced the collection of the money from the alleged vendee, you should find for the defendant," — which instruction was refused; to which refusal appellant excepted, and it is strongly urged here that, by the law, appellant was entitled to this instruction. It is true that there are a few authorities sustaining the view stated in the instruction (*Richards v. Jackson*, 31 Md. 250; *De Santos v. Taney*, 13 La. Ann. 151); but such view is unreasonable; for, if such were the law, a broker could not consummate a sale, or make a binding contract of sale, so as to be entitled to commission, without the owner had vested him with power over the title. In the general employment of a broker to sell real estate, no such power is given; and it is not necessary, and should not be necessary, to give it, as it would open a channel for confusion and fraud. The owner does not wish to part with

the control of his property; simply to obtain the aid of a broker to sell it. He employs a broker to procure a purchaser, retaining in himself the power to make binding contracts and conveyances. The terms of sale are sufficient for the broker. So, in the general employment of a broker, when he procures a purchaser able and willing to buy at the terms stated by the owner, he has performed his part; he has done all he can do, and all he was employed to do. The owner may decline to convey or complete the sale. He may so decline for the reason that he may get more by holding and raising his price, or for any other reason; but this does not and should not relieve him from his liability to pay his broker for his services in procuring a person able, ready and willing to purchase at the terms given, the same as if he had completed the sale. Such is the character of the general employment of a broker in the sale of real estate, and it seems reasonable and just, and is supported by the weight of authority upon the subject, as may be seen by the cases first above cited, as well as the following: *Alexander v. Breeden*, 14 B. Mon. 125; *Martin v. Silliman*, 53 N. Y. 615; *Neilson v. Lee*, 60 Cal. 555; *McGavock v. Woodlief*, 20 How. 221; *Lloyd v. Matthews*, 51 N. Y. 124; *Fisk v. Henarie*, 9 Pac. Rep. 322; *Bell v. Kaiser*, 50 Mo. 150; *Hamlin v. Schulte*, 27 N. W. Rep. 301; *Goss v. Brown*, 31 Minn. 484; 18 N. W. Rep. 290; *Mooney v. Elder*, 56 N. Y. 238; *Coleman v. Meade*, 13 Bush, 358.

As to the rulings of the court at the trial. It is assigned and argued that the court erred in admitting the evidence of the appellee and the witness Norvell as to the value of services in the sale of real estate, and the customary charges and commissions upon such sales. It is alleged in the complaint that, by the terms of the employment, appellant agreed to pay five per cent. This evidence showed that the customary rate was five per cent. The admission of evidence so variant from the allegations of the complaint is urged here as cause for

reversal of the judgment. In view of all the evidence, together with the character of the contest, we do not think this evidence was of the character to surprise, prejudice or mislead appellant. In the case of *Sussdorff v. Schmidt*, 55 N. Y. 320, on this point, the law is stated thus: "Under a complaint to recover an alleged agreed compensation for services, a recovery upon proof of and for the value of the services is sustainable. At most, it is but a variance between the pleading and proof, which may be disregarded, unless it appears that it misled the defendant." And section 81 of our code provides that such error shall be disregarded: "If the opposite party is by such variance surprised or misled, the court may on terms allow an amendment of the pleading to conform to such proof." No surprise was even claimed here; so it is apparent that such error is insufficient to warrant a reversal of the judgment.

It is assigned and argued that the court erred in admitting the testimony of the witness Rhodes about the letters from Doty, and in refusing a rule on witness Rhodes to produce the letters. The testimony in this regard was as follows: (By appellant's counsel.) "*Question*. Mr. Rhodes, were you acting for yourself, on your own behalf, in making this purchase; were you acting for yourself or somebody else? *Answer*. I was acting for myself in a certain sense. I can explain that if you wish it explained. *Q*. Well, sir, I would like to have it explained. *A*. Well, we bought some lands here, Mr. Doty and myself, west of town, and were willing to buy some more if we thought we could get some that would pay. I had an arrangement with Mr. Doty by which I could get the money by drawing on him in New York to pay for land that I would see fit to buy and thought was reasonable, leaving it to my judgment to say whether it should be purchased or not. *Q*. Was this arrangement in writing, Mr. Rhodes? *A*. I think I had some letters from Mr. Doty to that effect, and Mr. Doty was here

himself. " *Q.* How long before this transaction was it that Mr. Doty was here? *A.* Doty had been here, I think, through the summer. I don't know how long, exactly. I was corresponding with him all the time. *Q.* You had a talk with him about this transaction? *A.* This particular piece of land? *Q.* Yes, sir. *A.* No, I think not. *Q.* You were corresponding with Mr. Doty? *A.* Yes. *Q.* After the time he went away, up to the time of this transaction? *A.* Yes, off and on. *Q.* About making these investments? *A.* Not so much about that as if I was to find any property that was cheap, that we thought some money could be made out of, he would furnish the money to buy it. That was a personal matter between Mr. Doty and myself." Motion was here made by appellant's counsel that the testimony about what the letters contained be struck out. Denied by the court. "*Question.* Have you those letters, Mr. Rhodes? *Answer.* I have a great many letters from Mr. Doty. *Q.* On a former trial of this case, do you remember of producing a certain letter which you claimed was your authority from Mr. Doty? *A.* No, sir; I don't think I presented a letter as my authority for buying this place. I presented a letter in which Mr. Doty said something about drawing on him if I wanted money. It had nothing to do with the purchase of this place. *Q.* You never had any letter relating to this place? *A.* No; I never corresponded with him in relation to this place. My arrangement with Mr. Doty was that I should get the money on my judgment if I wanted to buy real estate. *Q.* That letter which you have referred to was in relation to this arrangement that you now speak of, wasn't it, Mr. Rhodes? *A.* No; I don't think it was. *Q.* Have you that letter? *A.* I don't know whether I have or not." Upon which a motion was made by appellant's counsel for a rule to produce the letters, and denied. There was no error in these rulings, as it appears from the evidence in the case that Rhodes had arranged for the down payment, and

was going to take title to himself, so that his relations with Doty were immaterial to the parties to this case.

In rebuttal, over the objections of appellant, certain questions were answered by appellee Harris as follows: " *Question.* Did you state to Buckingham at the time of this first conversation with him that you could not sell the land subject to the lease? *Answer.* No, sir; I think not. I said to him that it would be difficult to sell it subject to the lease. *Q.* When did Rhodes first offer you $40 an acre? *A.* After we arrived at Boulder, at Brainard's Hotel. *Q.* The defendant testified that you offered him $37.50 per acre instead of $40. *A.* I offered him $40, and he remarked that $960 was a good deal of commission, and he wanted me to accept two and one-half per cent. I refused to do so. *Q.* Did you have any conversation with him at the house about his taking $37.50 per acre? *A.* There was nothing; I said nothing in regard to $37.50 at his house." It is urged here for appellant that these questions and answers were not admissible in rebuttal, for the reason that they were of the premises previously gone over in chief, and that the court erred in admitting the same. It will be seen that they were in the main responsive to, and contradictory of, independent and affirmative statements made by appellant in his testimony of matters not previously disclosed, and impossible of contradiction except in rebuttal. Besides, it is always within the discretion of the court to admit, in rebuttal, evidence which in strictness should have been produced in chief. *Smith v. Mayer*, 3 Colo. 210.

The judgment should be affirmed.

We concur: MACON, C.; RISING, C.

BY THE COURT. For the reasons given in the foregoing opinion the judgment is affirmed.

*Affirmed.*