# COURT OF APPEALS

.OF THE

## STATE OF COLORADO

## January Term, 1915

[No. 4081.]

### W. T. CRAFT REALTY COMPANY V. LIVERNASH ET AL.

1. LAND BROKER—*Authority.* A broker employed merely to find a purchaser for lands upon specified terms has no authority to execute a written contract of sale binding the land owner. (5.)

2 —— *Right to Commission.* To entitle the broker employed to find a purchaser of lands, to his commissions, it is not necessary that he should secure the execution of a contract binding the purchaser. (5.)

If the name and address of the proposed purchaser are furnished to the vendor, or, as it seems, if the name and address come to the vendor from other sources, in due season, so that he has opportunity to negotiate with him and secure a binding contract, the failure to secure such contract is not to be charged to the broker. (8.)

That no sale is completed does not affect his right, if the failure was without fault on his part.

The broker having, within thirty days after objections made to the title by the proposed purchaser, surrendered the deposit and contract of purchase made by such purchaser, without the knowledge or consent of his principal, and without informing his principal of a provision in the contract or offer of purchase, for the correction of defects in the title within a reasonable time, Bell, J., and Morgan, J., were of opinion that the broker was not entitled to his commission. (18, 19.)

3. VENDOR AND VENDEE—*Merchantable Title Implied.* One offering lands for sale without reservation as to the title impliedly warrants that his title is merchantable and without substantial defect. (7.)

4. APPEAL AND ERROR—*Presumptions—As to Evidence Considered Below.* It will not be presumed in favor of the party successful below that the trial court considered evidence which, upon his objection, was excluded. (8.)

*Error to Denver District Court.* HON. JAMES H. TELLER, Judge.

MR. W. W. DALE, for plaintiff in error.

MR. JOHN H. GABRIEL, for defendants in error.

KING, J., delivered the opinion of the court.

Plaintiff in error brought suit to recover from defendants a sum alleged to be due as commission earned under the following contract, dated July 28, 1910:

"In consideration of the agreement of The W. T. Craft Realty Co. hereinafter contained, I hereby give to said Company, for 120 days from this date, the exclusive agency for the sale of the property and for the price and terms described upon the reverse of this card, and agree to pay to said Company a full regular commission if the property is sold or exchanged through its agency or otherwise during said period, at the within price or any price accepted by me." (Signed by defendant Livernash.)

"We hereby accept the above agency and agree to use our best efforts to effect a sale." (Signed by plaintiff.)

The terms on the reverse side of the card were $3,350 for property in Denver therein described. The testimony offered by plaintiff and admitted was not disputed by defendants. It showed that plaintiff advertised the property for sale; that upon reading said advertisement, Felix A. Richardson called upon plaintiff, was shown the property, and advised of the terms given by defendant to plaintiff, and accepted the same, paid $100 to the agent to bind the bargain, and offered to pay in full within fourteen days, upon receipt of a deed and abstract showing good title, and that he was ready, able and willing to comply with the terms if the title to the property was found to be merchantable. This purchaser was found, and accepted the terms, on or about the 27th day of August. On the same day the defendant Livernash was notified of the sale, by

letter addressed to her at Fort Collins, Colorado, at which place she resided, advised of the cash deposit, and that the balance was to be paid on or before fourteen days, provided abstract should show title perfect and clear of encumbrance. In response to this letter, the defendant wrote, expressing satisfaction, advising the plaintiff that the abstract was in the hands of her attorney, Mr. John H. Gabriel, at Denver, where plaintiff could get it, and that thereafter "all papers can be handled through Mr. Gabriel, who will advise me." On the 9th day of September, upon examination of the abstract, Mr. Richardson's attorney found the title seriously defective, and so reported in a carefully written opinion, which was by plaintiff delivered to Mr. Gabriel. On the 13th of September plaintiff notified defendant of the attorney's report, and that the opinion had been delivered to Mr. Gabriel. The defect in the title which rendered it unmerchantable was admitted by defendants' attorney, who thereafter, at a time not disclosed, instituted proceedings to quiet title, which, it seems, at some later date, not disclosed, but prior to the trial in the district court, had resulted in a judgment quieting title. This cause was first tried in the county court, where judgment went in favor of plaintiff. Appeal was taken to the district court; trial there had on May 14, 1913, whereupon judgment was rendered in favor of defendant. Plaintiff offered in evidence a written agreement entered into on the 27th day of August, 1910, between the plaintiff and the said Richardson, embodying the terms and conditions upon which said Richardson agreed to take the property and make the payments. On objection of defendants' counsel, said agreement was excluded from evidence. Plaintiff excepted, but the exclusion of the agreement is not assigned as error.

Some time after receiving the opinion of his attorney, Richardson demanded a return of the sum deposited by him, but extended "for ten days or more" the time for examination of the title, and to ascertain whether the defect could

be cured. The evidence seems to show that the deposit was repaid to him on the 10th day of October, 1910.

Among other things, the complaint alleged that the purchaser procured by the plaintiff refused to accept the title "for the reason that the same was not a good and merchantable title, and could not be corrected within a reasonable time." Defendants, by answer, admitted that the title was defective, but denied that it could not be corrected within a reasonable time; alleged that said defect was unknown to defendants; that it was such that it could be corrected within a reasonable time; that as soon as they were advised of said defect they made every effort and exercised every diligence to correct the same, "and that the said title *is now being corrected and perfected.*" This answer was filed on the 26th day of April, 1912, one year and eight months after the purchaser was procured.

1. We think the judgment cannot be affirmed. We do not agree with the theory of the appellees upon the evidence admitted. The theory of the defense was stated by counsel as follows:

"It is based upon the fact that there was no contract entered into with us at all, nor was this purchaser ever produced to us. There was no sale within the rule of law. He (the broker) must either bring the proposed purchaser and the owner together, so that they may make a contract, or he must furnish the owner an executed contract, so that the owner can hold the purchaser. That is the ground upon which I stand entirely. As to this defect in the title, we have admitted that it was there, because we proceeded to correct it. I might say that we substantially admit everything here as to the evidence. We have no question that Mr. Craft found Mr. Richardson, and that Mr. Richardson was ready, able and willing to buy, but he never brought Mr. Richardson to Mrs. Livernash, the owner of the property; they never met or talked together about it; he did not produce to her any contract of any kind or nature; and

there was none signed of any kind or nature, so that he never, within that rule of law, ever produced the purchaser to the owner of the property."

We think that, within the rule of law as recognized in this state, there was a "sale" by the broker; that a purchaser was "produced" to the owner; that plaintiff was not required to secure the execution of a binding contract by the defendants and Richardson, and that plaintiff was entitled to judgment for for his commission, unless the sale so made failed of consummation through his fault.

The employment of the plaintiff as a broker, as evidenced by the written agreement quoted, is nothing more than an ordinary general employment of a broker "to sell" real estate upon terms proposed by the owner, and in which the broker was given an exclusive agency for a specified time. By such employment no power was given to the broker to execute a contract on behalf of the owner that would be binding upon her, nor was it given any other control over the property or its title. In law, the broker was employed only to procure a purchaser, and when, within the time fixed, it produced a purchaser ready, able and willing to buy on the terms stated by the owner, and acceptable to her, it performed its part of the agreement, and did all it was employed to do. *Buckingham v. Harris,* 10 Colo., 455, 15 Pac., 817; *Ross v. Smiley,* 18 Colo. App., 204, 70 Pac., 766; *Finnerty v. Fritz,* 5 Colo., 174; *Cawker v. Apple,* 15 Colo., 141, 25 Pac., 181; *Goodridge v. Holladay,* 18 Ill. App., 363. In order to satisfy a general contract of employment to sell real estate, it is not necessary that a broker shall secure the execution of a written or binding contract between the owner and the proposed purchaser. In *Buckingham v. Harris, supra,* the court cites with approval *Doty v. Miller,* 43 Barb., 529, in which the law is stated that a broker or agent who undertakes to sell property for another for a certain commission has earned and can recover his commission when he finds a purchaser willing to purchase

at the price, though the sale was never completed, if the failure to complete the same was in consequence of a defect of title, and without any fault of the broker or his agent; also *Delaplaine v. Turnley,* 44 Wis., 31, in which it was held that if a broker, employed to sell property at a price satisfactory to his principal, produces a party ready to make the purchase at a satisfactory price, the principal cannot relieve himself from liability to the broker. *Moses v. Bierling,* 31 N. Y., 462, in which it is said that a broker employed to make a sale is entitled to his commission when he produces a party ready to make the purchase; also *Hart v. Hoffman,* 44 How. Prac., 168, in which it is ruled that where a broker, employed to sell real estate, procures a party willing to purchase on the owner's terms, the broker has earned his commissions. After adopting the rule stated in these several cases, the supreme court sustained the trial court in the refusal of an instruction that the broker is not entitled to his commission until he has completed a valid contract of sale, binding upon both vendor and vendee, and held that in the general employment of a broker to sell real estate, the broker is given no power over the title, or control of the property itself; that the broker is employed only to procure a purchaser; that for the broker's use, the terms of sale alone are sufficient, and when he has procured a purchaser ready, able and willing to buy on those terms, he has performed his part, done all he can do, and all he was employed to do; and such seems to have been the uniform ruling of the courts of this state since that opinion was handed down. The settled construction put upon the general employment of professional brokers "to sell" or to "close a bargain" concerning real estate, is that such employment is authority to find a purchaser at the price named, and does not confer power upon the agent to execute a written contract binding upon the owner. *Duffy v. Hobson,* 40 Calif., 240, 244, 6 Am. Rep., 617; *Rutenberg v. Main,* 47 Calif., 213, 219; *Desmond v. Stebbins,* 140 Mass.,

339, 5 N. E., 150; *Ross v. Smiley, supra.* The agent is not required to do what he has no authority to do.

2. Upon the undisputed facts, the only reason the sale was not consummated was because the title to the property offered by defendants was not merchantable. The condition of the title was not known to the plaintiff at the time it procured the purchaser. It is the law in this state that when the vendor of property offers it for sale without reservation as to the character of the title, he impliedly warrants to the vendee that the title is good, merchantable, and free from substantial defects. *Price v. Immel,* 48 Colo., 163, 170, 109 Pac., 941. So, also, when the property is placed in the hands of a real estate broker for sale, and he does not know, at the time he contracts to sell the same, of the defect in title which ultimately defeats his efforts, he has the right to assume, and his principal impliedly warrants, that the title to the property he deals with is free from infirmity. *Berg v. San Antonio S. R. Co.,* 17 Tex. Civ. App., 291, 42 S. W., 647, 43 S. W., 929; *Gauthier v. West,* 45 Minn., 192, 47 N. W., 656; *Birmingham Co. v. Thompson,* 86 Ala., 146, 5 South,, 473; *Sweeney v. Oil Co.,* 130 Pa., 193, 18 Atl., 612; *Phelps v. Prusch,* 83 Cal., 626, 23 Pac., 1111; *Peet v. Sherwood,* 43 Minn., 447, 45 N. W., 859; *Gonzales v. Broad,* 57 Cal., 224. Consequently, if the plaintiff's efforts in this case were defeated because of the defect in the title, such failure was not through its fault, and it cannot thereby be deprived of its right to recover the compensation agreed upon. As between the plaintiff and the defendants, as well as between the defendants and Richardson, the defendants alone were responsible for the defect in title, and although they were ignorant of such defect, it is nevertheless regarded as through their *fault* that the sale was not completed. *Monk v. Parker,* 180 Mass., 246, 163 N. E., 793; *Goodridge v. Holladay, supra.*

3. Defendants in error contend that, under the evidence, the plaintiff did not find or procure or produce a pur-

chaser, within the meaning of those terms as applied to the finding, procurement or production of a purchaser, in contracts of brokerage, because (it is contended) it did not give the purchaser's name to defendant, or bring the defendant and the proposed purchaser together. The evidence shows that the first notice given by plaintiff to defendants did not contain the name of the purchaser, but that his name and address in Denver did come to the knowledge of defendants, and to their attorney, on or about the 12th day of September, and that they had ample opportunity after obtaining such notice, and before the deposit was withdrawn, and while Mr. Richardson was still ready, able and willing to purchase the property, to negotiate with him and demand such written contracts as might be necessary and binding, both upon vendor and vendee; and defendants' failure so to do cannot be charged to the plaintiff in this case. We think the evidence fully and conclusively establishes the allegations that plaintiff found, procured and produced to the defendants a purchaser ready, able and willing to purchase, and that the sale would have been consummated except for the defect in title. *Ross v. Smiley, supra,* fully supports this conclusion. In that case, the purchaser was in New York, and the owner in Denver, and it does not appear that they were in closer proximity during the negotiations. *Strout v. Kenney,* 107 N. Y. Sup., 92.

4. An issue seems to have been made by the pleadings upon the question of whether the admitted defect in the title could be or was cured within a reasonable time. The only evidence offered which seems to make that issue material is contained in the written agreement made between the plaintiff and Mr. Richardson, which agreement, we think, should have been admitted; but as that evidence was excluded (upon the objection of defendants' counsel), it cannot be presumed, in their favor, that the trial court considered such evidence, or based its finding and judgment upon a dispute as to what constituted a reasonable time.

Moreover, it is shown by defendants' answer that the title was still in the process of litigation one year and eight months after the purchaser had been produced; and, in the state of the record, this court is not prepared to say that the title was, or could be, cured within a reasonable time. Upon that question we express no opinion.

Reversed.

CUNNINGHAM, P. J., and HURLBUT, J., concur.

BELL, J., concurs specially.

MORGAN, J., dissents.

BELL, J., specially concurring:

I have read and re-read the opinion of the majority of the court in an endeavor to determine whether I should yield to rather well established precedents and join in a judgment which I am convinced carries injustice to the defendants in error, because, perchance, their counsel and the trial court confined the basis of the evidence upon which the judgment rests to limits not justifiable under our appellate court decisions. In other words, if we were permitted to consider the written contract between the plaintiff company and the prospective purchaser, which was wrongfully excluded by the court upon application of counsel for defendants in error, then I should not join in a judgment of reversal. The contract referred to was in writing and duly signed by the plaintiff in error and purchaser, and provided in part that:

"If title is not good as above mentioned, and cannot be corrected within a reasonable time, then this receipt (contract) shall be null and void, and the $100.00 paid this day to be returned to F. A. Richardson (the prospective purchaser);" and also stipulated that the $100 payment received on the purchase price was "taken subject to the approval of the owner."

On August 27th, 1910, the Realty Company wrote the defendants in error, in part, as follows:

"I have a deposit of $100.00 cash to bind the bargain on your house, 1821 Penn., the balance to be cash on or before ten days, provided abstract shows title perfect and clear of all incumbrance. Please send the abstract at once."

August 29th, 1910, Mrs. Livernash replied to the above letter as follows:

"* * * I am this day mailing the abstract of house at 1821 Pennsylvania to Mr. John H. Gabriel * * *, who has charge of my affairs, and upon whose advise I depend, and any question that may arise, he is able to answer, having attended to the title of the property when it was the estate of my mother, now deceased. The property now stands in the name of myself and two sisters, all of age, and I have asked Mr. Gabriel to have the abstract brought down to date, and if you will call at his office you may get it. I trust you will find it satisfactory, and if so, all papers can be handled through Mr. Gabriel, who will advise me."

September 13th, 1910, the company again wrote Mrs. Livernash, in part, as follows:

"I am sorry to inform you that our customer's attorney reports the title not merchantable. I have turned the attorney's opinion over to Mr. Gabriel, and I suppose he will report to you."

September 19th, 1910, the company further wrote Mrs. Livernash, in part, as follows:

"I have an inquiry for your house for rent. If it is going to take some time to fix up the title it might be well to rent the house until title can be fixed up so it can be sold. I am very sorry that Mr. Richardson's attorney could not pass the title. I still have some hopes that Mr. Gabriel and he will be able to patch the matter up in some way, but if I can rent the house, subject to sale, it seems to me it would be well to do so. Some of the rooms need papering pretty badly. The rooms in the rear are in the worst condition. The kitchen, two back bed rooms and bath room are pretty

badly smoked, but if they are done new the other three rooms will look very badly. If the house were papered and occupied I think it would be easier to sell it than vacant and in the condition it is, and it would not take the rent long to pay for repairs."

On September 21st, 1910, Mrs. Livernash replied to the above as follows:

"In reply to yours of the 19th inst., if you will furnish me an estimate on repairs for the house I will decide what to do. I have not heard from Mr. Gabriel since my husband's return from Denver, and have been in hopes he could make some arrangement with Mr. Richardson's attorney. However, Mr. Gabriel said it would take about ninety days to straighten that flaw in the title, and unless we had a cash deposit binding Mr. Richardson, I do not care about waiting on him, and would prefer to rent it subject to sale. We have always received $25.00 per month rent, and that is what I would ask, and leave it in your hands to collect each month, and if you can get it repaired cheap enough I would be glad to have the rent pay for it, as I have no ready money to put into it. As soon as I hear from you regarding estimates I will let you know what to do, as by then I expect to hear from Mr. Gabriel."

We hear nothing more of their arrangements or doings until the defendants in error are sued. The evidence shows that from 10 to 30 days after the attorney for the prospective purchaser reported some omissions or so-called flaws in the title, the company, without the knowledge or expressed consent of the defendants in error, returned the $100 payment to the prospective purchaser and surrendered the written contract of sale. It would seem, from the return of the purchase money and contract of sale by the company and the tenor of its letters regarding the renting and future sale of the house, that the parties mutually understood or were justified in understanding that the tentative sale was voluntarily abandoned by the agent and acquiesced in by the owners. It would seem if the agent wished to insist on

any benefits arising from its contract, it should have insisted upon that provision of the contract allowing the owners a reasonable time in which to correct any flaws or omissions in the title. The owners notified the agent, in ample time, that their attorney estimated that it would take about 90 days to correct the flaw. It was a proper matter for the court, under all the circumstances, to determine whether 10, 30 or 90 days were reasonable periods in which to correct and make good the title. The prospective purchaser testified that he demanded the return of his money in about 10 days after the defect was reported by his attorney, but that he would have taken the property at the same price within a reasonable time thereafter. There is no evidence whatever that the agent insisted upon a performance of that provision in the contract giving a reasonable time within which to correct the title; neither did it notify the owners that any such provision had been made or any such privilege extended to them in the contract. If the agent had fully informed the owners of the written contract he had made, and had insisted upon the sale he had contracted for being consummated, and had turned over the control of the $100 payment to the owners for their disposition, and had not abandoned and given up the only contract it had made for the sale and the purchase money received to bind it, then it might have had a legal claim for its services. To entitle a broker to a commission for selling real estate, he must show that he has completed the undertaking according to the terms of his contract, or that its completion was prevented, *without his fault,* by his principal. Mechem on Agency, Sec. 965.

The evidence in this case shows that the owners were anxious to sell, and, upon an objection having been urged to certain omissions in the title, their attorney immediately set about to have the defect corrected, and that the title was quieted in them at the time of the trial of this action. It is suggested in the opinion of the majority of this court

that it was not quieted at the time the suit was instituted or the answer filed; however, there is no evidence showing that it could not have been quieted within the estimated 90 days aforesaid if the agent had not voluntarily given up the partial payment and only contract it had made for a sale.

It will be borne in mind that the complaint in this action is most general in its terms, and, in aid of the complaint, there is filed in the case a bill of particulars which is in the form of a pleading, wherein, among many other things, the plaintiff in error alleges:

"That on or about said day (July 28th, 1910) the said defendants gave to the said plaintiff, for one hundred and twenty days, * * *, the exclusive agency for the sale of the property * * *, for the price of $3350.00, and agreed to pay said Company a full regular commission in case the property should be sold or exchanged through its agency or otherwise, during said period for that price or at any price accepted by them.

"That thereafter said defendants modified said contract and listed said property with the plaintiff for $3200.00 net, and employed the plaintiff to procure a purchaser therefor, and agreed to pay for its services, all that the property might sell for in excess of the said sum of $3200.00.

"* * * That the plaintiff entered into a written contract with the said Felix A. Richardson, dated August 27th, 1910, for the sale of said property at that price and received the sum of $100.00 as part payment therefor, which said sale was duly reported to the defendants and accepted by them, and an abstract of title delivered by defendants to plaintiff and by plaintiff to said purchaser. That thereafter the said Felix A. Richardson refused to accept the title to said property for the reason that the same was not a good and merchantable title and could not be corrected within a reasonable time, * * *."

The defendants treated this formal bill of particulars in aid of the complaint as a part of the complaint and specifically admitted certain allegations and denied other allegations in said bill of particulars, including the allegation that the title to the property "could not be corrected within a reasonable time."

Whether the allegations in the bill of particulars formally filed in this court as a part of the records of the case and treated by the parties as a part of the formal pleadings can be legally so considered, nevertheless, they may be considered in the nature of admissions of record in the case. The plaintiff in error alleged in said bill of particulars that a written contract for the sale of the property was made between it and the owners, and afterward modified, and that the title was found so defective that it could not be corrected within a reasonable time. However, there is not a particle of proof in the record to the effect that the title could not be corrected within a reasonable time. No one at any time indicated any doubt as to the equitable title being vested in the defendants in error. In fact, the evidence tends to show that they and their predecessors in interest possessed the property under a good faith claim under color of title for more than 20 years; therefore, a presumption of grant should be indulged. Also, the attorney of the proposed purchaser simply pointed out some omissions in the recorded title "as disclosed by abstract," and reported "The property appears to be owned by, and in possession of, three sisters, Mary E., Jennie L. (Livernash) and Margaret Gillis. While I would not say that the title is not good and sufficient to hold the property as against any outstanding claim or title, yet I do not consider it a good merchantable title;" and then shows that the probate of a will under which the defendants in error claim title that it was properly probated in Hamilton County, Ohio, that deeds were made and confirmed by the Ohio court, and that the will should also have been probated in Colorado, as the real estate is situated

here. The examiner of the title for the proposed purchaser admits that the probate of the will could be corrected, and then points out that "the will does not empower the executor, as executor, to convey the real estate," and especially that situated in Colorado, but says that it can be corrected in this state. The examiner of the title also admitted that there was a tax title to the premises, which may and probably does vest a title in the defendants' predecessors in interest, "which would protect the present owners against any other claim of title," but expresses his opinion that a tax title is never regarded as a merchantable one until adjudicated by a competent court. The examiner also found that "It is also probable that the present owners could successfully defend their possession under the statute of limitation," but holds that such a title is not merchantable until judicially determined by a court of competent jurisdiction. In other words, the examiner of the title, while finding the equitable title in the defendants in error, and such as would protect them in the possession of the property as against all others, he, nevertheless, held that, to make the title merchantable as understood in law, certain formal court determinations should first be had.

The general statement of the law in the opinion of the majority of the court, that when a broker procures a purchaser ready, able and willing to buy on the terms stated by the owner, and acceptable to him, he performs his part of the agreement, and does all that he is employed to do, if conceded to be the law, must always be taken with the qualification that the broker shall do nothing to defeat the purchase, or that the sale must not be prevented by the fault of the broker.

The Supreme Court of the State of Illinois states the rule in the following language:

"The duty of a broker, who is employed to sell real estate, is to find and produce to the vendor a purchaser who is ready, willing and able to complete the purchase as proposed. This he must do before he is entitled to any com-

missions. * * *. If the principal accepts the purchaser thus presented, either upon the terms previously proposed or upon modified terms then agreed upon, and a valid contract is entered into between them, the commission is earned. In such case, the broker has earned his commission, although the sale is never actually completed, if the failure of the purchaser to complete the sale results from the inability of the vendor to make a good title, and without fault on the part of the broker." *Wilson v. Mason,* 158 Ill., 304-310, 43 N. E., 134, 135, 49 Am. St., 162.

The court, in *Wilson v. Mason, supra,* continues by analyzing three lines of decisions on the rights of brokers, viz.:

"Some of the cases go so far as to hold that the broker is not entitled to his commissions unless the sale is actually accomplished by the delivery of the deed of the land from the vendor to the vendee, and the payment of the purchase money by the latter, or unless it is proven that the sale is prevented by the fault of the vendor. Other cases seem to hold that the broker is entitled to his commissions when the minds of the vendor and purchaser meet in a verbal agreement for the sale by the one and the purchase by the other of the land. We are not inclined to follow either of these classes of cases, regarding them as extreme and exceptional. The true rule is that the broker is entitled to his commissions if the purchaser presented by him and the vendor, his employer, enter into a valid, binding and enforceable contract. If, after the making of such a contract, even though executory in form, the purchaser declines to complete the sale and the seller refuses to compel performance, the broker ought not to be deprived of his commissions. He has done all that he can do when he produces a party who is able, and, in binding form, offers to purchase upon the proposed terms. An agreement by a real estate broker to procure a purchaser not only implies that the purchaser shall be one able to comply, but that the seller

and the purchaser must be bound to each other in a valid contract. So, where the agreement of the real estate broker is to make a sale, his commission is earned when a contract is entered into which is mutually obligatory upon the vendor and vendee, even though the vendee afterwards refuses to execute his part of the contract of sale or purchase," citing in support of the doctrine *Parker v. Walker*, 86 Tenn., 566, 8 S. W., 391; *Francis v. Baker*, 45 Minn., 83, 47 N. W., 452; *Love v. Miller*, 53 Ind., 294, 21 Am. Rep., 192; *Veazie v. Parker*, 72 Me., 443; *Willes v. Smith*, 77 Wis., 81, 45 N. W., 666; *Rice v. Mayo*, 107 Mass., 550; *Christensen v. Wooley*, 41 Mo. App., 53; *Love v. Owens*, 31 Mo. App., 501; *Greene v. Hollingshead*, 40 Ill. App., 195; *Short v. Millard*, 68 Ill., 292; *Kerfoot v. Steele*, 113 Ill., 610; *Ward v. Cobb*, 148 Mass., 518, 20 N. E., 174, 12 Am. St. Rep., 587.

In *Wilson v. Mason, supra*, the Illinois court continues as follows:

"An oral agreement upon the part of the purchaser of land would not be a valid agreement; and if he refused to complete the sale of the land after such oral agreement, without fault upon the part of the seller, the obligation of the broker would not be fulfilled, and he could not recover his commissions," and cites *Parker v. Walker*, 86 Tenn., 566, 8 S. W., 391; *Middleton v. Findla*, 25 Calif., 76; *Whitney v. Cochran*, 1 Scam., 209; *Christensen v. Wooley*, 41 Mo. App., 53; "nor would a written agreement be binding upon the purchaser of land, under the Statute of Frauds, if such an agreement were signed for him by some other person not lawfully authorized in writing to do so," citing *Cloud v. Greasley*, 125 Ill., 313, 17 N. W., 826; *McGinnis v. Fernandes*, 126 Ill., 228, 19 N. E., 44.

It would seem that the trial court and counsel for defendants in error were governed in their application of evidence by the principles announced in *Wilson v. Mason, supra*. The writer is not prepared to say that they were not justified. It would be unfortunate, indeed, if the highest

court of this state should unqualifiedly commit itself to the doctrine that a mere oral agreement between a broker and a proposed purchaser for the sale of realty, or an unauthorized written agreement, that was not enforceable against the purchaser, and never consummated, without fault on the part of the vendor, should entitle the broker to a commission. It is significant that practically all of the cases cited from our appellate courts awarding commissions on the mere finding of a purchaser ready, able and willing to buy on the terms specified were successful on the grounds that the vendor refused to carry out the agreement, or was unable to furnish a merchantable title.

In the instant case we think that the case turns upon the failure of the broker to complete its obligation by turning the purchase money and contract of sale over to the owner, instead of turning them back to the purchaser, and abandoning all it had accomplished in the negotiations.

We very much regret to be compelled to accede to a reversal for the technical reason that the written contract of sale was not formally admitted in evidence.

MORGAN, JUDGE, dissenting:

A real estate broker is entitled to a commission (under the decisions in this state, referred to in the majority opinion, and in the specially concurring opinion by Judge Bell), when he has produced a purchaser, ready, able and willing to buy on the terms proposed by, or acceptable to, the owner, even though a sale is not consummated, provided it was the owner's fault that a sale was *not* consummated. *Buckingham v. Harris,* 10 Colo., 455, and cases cited. And when the broker sues for a commission on a contract of employment, when a sale is not made, he should be permitted to prove that it was the owner's fault that a sale was not made; *Doty v. Miller,* 43 Barb., 529, 530; but if by his own evidence or the evidence of the owner it appears that the fault was his own, he cannot recover. This rule is clearly disclosed in *Buckingham v. Harris, supra,* on p. 457,

where it is quoted that the broker is entitled to his commission, "if the failure to complete the sale was in consequence of a defect of title, and *without any fault of the broker or agent.*" (Italics mine.)   In this case the lower court was justified under the evidence in finding that the agent could not recover because it was his own fault that the sale was not consummated, although no findings were made in the record by the court in rendering the judgment.   The agent in this case sustained the burden that was upon it, by proving that the owner's abstract disclosed a defective title, and that the owner was notified thereof; and, if the evidence had disclosed nothing more, it might be said it was the owner's fault that a sale was not made; but it appears that while the owner was, in good faith, preparing to perfect the title and carry out the sale, the agent returned to the purchaser his deposit together with the contract accompanying it, and let the purchaser go, without making any effort to hold him until the title could be perfected, or helping in any other way, after that, to consummate the sale; although the purchaser must have been willing to wait until the title could be perfected, as he testified that he was ready, able and willing to buy if the title had been good "for maybe sixty days" after the $100 was returned to him.   It very frequently happens that a title is defective, and it always requires time to conclude a sale, and where an agent relies on his own arrangements with the purchaser, not effecting a binding contract between the purchaser and the owner, he ought to hold his purchaser "willing" for a sufficient length of time to permit the sale to be concluded.   *Finnerty et al. v. Fritz,* 5 Colo., 174, 180.   The agent may relieve himself of this duty to hold the purchaser, by effecting a binding contract between the owner and the purchaser. See also the specially concurring opinion, citing Mechem on Agency, Sec. 965.

The case of *Wilson v. Mason,* 156 Ill., 304, cited in the specially concurring opinion, and the authorities relied upon

by defendant in error, seem to hold that the binding contract must be effected to entitle the agent to his commission; but, while such contract would relieve the agent from his duty to hold the purchaser, it is not necessary under Colorado decisions, if the agent does hold him for such reasonable time as may be necessary to effect a sale. Neither this court nor the Supreme Court has ever held, except in the majority opinion, that an agent is entitled to a commission, where a sale is not made, by simply producing a purchaser, ready, able and willing to buy, without holding him in such condition or mood for a reasonable time, or else effecting a binding contract, except when the owner has prevented the sale, by some act or omission to act. The lower court must have found that the agent neither so held the purchaser nor effected the binding contract. The strongest case I have found against the owner in such instances states the rule as follows: "If the owner *refuses* or *declines* to *take any steps* to *remove* the *defect* or cloud, the agent is entitled to his commission the same as if he had consummated the sale." (Italics mine.) *Gerhardt v. Peck*, 42 Mo. App., 644, 651. The owner in the present case not only did not refuse or decline, but did remove the defect. The fact that she was slow in removing it makes no difference, because the agent's acts showed it was no longer interested in the matter, before a reasonable time elapsed for her to do it in.

The foregoing view of this case is upheld by the following statement in 19 Cyc., 257 to 270: "A broker employed to effect a sale or a lease of real estate is entitled to a commission, although the transaction fails of consummation because of a defect in the principal's title, provided that the *broker himself is not at fault.* * * *. The broker is not entitled to a commission under these circumstances, however, where the defect in the title *is not real and substantial, unless he has procured a valid contract from a solvent customer.*" (Italics mine.)

With due deference to the opposite view of the majority of my associates, I think the lower court was justified in finding that the agent abandoned the sale, and failed to hold his customer, either by his own efforts or by a binding contract, and that the judgment ought to be affirmed.

Decided October 13, A. D. 1914.   Rehearing denied February 8, A. D. 1915.