### ACTION BY REAL ESTATE BROKERS FOR COMMISSIONS.

Court of Appeals for Hamilton County.

GORDON W. DURRELL AND THE KAUFHOLD REALTY COMPANY V.
STATIA B. REYNOLDS, INDIVIDUALLY AND AS EXECUTRIX
AND TRUSTEE OF THE ESTATE OF E. B.
REYNOLDS, DECEASED.*

Decided, January 24, 1916.

*Agency—Real Estate Broker Entitled to His Commission—Where a
Purchaser Ready and Willing and Able to Take the Property is
Produced—Regardless of the Fact that the Contract of Purchase is
in a Farm Which is Unenforceable.*

The fact that a contract of purchase of real estate, procured by a real
estate broker, was imperfectly executed, is not ground for refusing
the judgment in favor of the broker for the amount of his commis-
sion, where the purchaser produced stands ready and is able to take
the property at the agreed price, notwithstanding the infirmity in
his contract of purchase.

*Hunt, Bennett & Utter,* for plaintiffs in error.
*Powell & Smiley,* contra.

JONES (E. H.), P. J.

The plaintiffs below, Gordon W. Durrell and the Kaufhold
Realty Company, sued the defendants, Statia B. Reynolds, in-
dividually, and Statia B. Reynolds, as executrix and trustee of
the estate of E. B. Reynolds, seeking to recover the sum of $1,800
for services in *finding a purchaser* for certain real estate be-
longing to the E. B. Reynolds estate.

The plaintiffs are real estate agents and on April 18th, 1913,
were employed by defendants by written contract as follows:

*Reversing *Durrell et al* v. *Reynolds et al,* 16 N.P.(N.S.), 486.

"CINCINNATI, O., April 18th, 1913.
"G. W. DURRELL AND THE KAUFHOLD REALTY CO.

"I hereby agree to sell the following property viz: Situate on the south side of Sixth St. between Main and Sycamore Sts., at the south-west corner of Sixth and Langdon Alley, being forty two (42) feet front on Sixth St., by a depth of one hundred and thirty-nine feet, ten inches, to an alley, with the improvements thereon, for the sum of Sixty Thousand ($60,000) Dollars, payable Cash and authorize you to procure a purchaser for the same and agree to pay you a commission of three per cent. on the amount for which said property may be sold. I guarantee the title good, and will convey by deed of General Warranty. Except as to taxes and assessments due after June 20, 1913. In consideration of your efforts to find a purchaser, I agree that you shall have the exclusive right to sell said property for 30 days; give you written notice withdrawing the same. It is further agreed that you shall be entitled to your commission if the property is sold during the existence of this contract by you, or the undersigned, or any other person, at any price acceptable to the undersigned.

"(Signed) STATIE B. REYNOLDS,
"Executrix of E. B. Reynolds Estate.

"Cincinnati, O.

"..................... hereby accept the agency for said property on the terms above stated."

On the same day the plaintiffs procured a purchaser who indorsed upon the above contract the following:

"CINCINNATI, O., April 18th, 1913.
"We hereby agree to purchase the above described property at the price and upon the terms above stated.

"(Signed) ESTATE OF L. B. HARRISON,
"C. L. HARRISON ET AL, Trustees."

Mr. C. L. Harrison who signed the agreement to purchase was one of three co-trustees for the L. B. Harrison estate. The evidence shows that he and his co-trustees were at all times ready, able and willing to take the property and in all respects perform their share of the contract.

The seller refused to convey the property to the Harrison estate, and then refused to pay the agent's commission, making

the claim that the contract of sale secured by the agent was unenforceable; in other words, that because it was signed by one of the trustees only it could not be specifically enforced. This claim was made and such defense interposed in the trial below and in argument here, notwithstanding the uncontroverted fact that Mr. C. L. Harrison was ready and able at all times to comply with the terms of the contract individually, and that the evidence plainly shows that he was authorized to sign the contract, or at least he together with his co-trustees were not only able but ready and willing at all times to comply with its terms.

To support her claim defendant in error relies upon *Pfanz* v. *Humburg et al*, 82 O. S., 1. The cases are similar in that each is an action by a real estate agent for his commission. In every other respect they differ. Throughout the opinion points of difference are commented upon as if the learned judge had in mind this case and was differentiating between them. To show how essentially different the facts are we quote in full the syllabus:

"P., a real estate agent, accepted the following proposition:

" 'CINCINNATI, OHIO, May 2, 1905.

" 'JOHN PFANZ, *Agent:* I hereby authorize you to sell for me the following described real estate, located at 2241 Flora Place, for the sum of three thousand five hundred ($3,500.00) dollars on the following terms: title to be perfect, free and unincumbered, payments to be cash, and I agree to give you sole authority to sell the same for the period of ten days, and agree to pay you for services when the property is sold.

" 'MAGDALENA HUMBURG,
" 'WILLIAM HUMBURG.'

"P. procured one who said he was willing to take the property at said price, and he paid the agent $9.75, for which the agent gave a receipt, and turned the payment over to the vendors; but no written contract of purchase was entered into, nor was possession taken by the alleged purchaser, who afterwards refused to take the premises or complete the purchase by entering into an enforceable contract.

"*Held:* That the condition in said contract of employment, 'to pay for services when the property is sold,' has not been complied with by the agent and he is not entitled to recover commission."

The case at bar is one in which the plaintiffs seek to recover for procuring a purchaser, and that is what they were employed for. But in the case cited, Price, J., in the second sentence of the opinion says:

"The petition shows that the right to compensation depended upon a completed sale."

Again, on page 11:

"This agency contract was not to merely procure an able, willing and ready purchaser, but the owners agree to *pay for services when the property is sold*."

And, to show further the ground upon which that case was determined, see page 13:

"* * * the owners agree to pay the agent for services when the property is sold. It is not averred in the petition, nor is it established by any evidence introduced by the agent, that a sale was made."

Also, see page 12:

"The plaintiff in error, through his counsel, makes the proposition, that 'where the real estate agent finds a purchaser who is ready, willing and able to take the property at the stipulated price, no written contract of purchase signed by the prospective purchaser is necessary to enable the agent to recover his commission.'

"As a general rule, we may assent to it, but it can not be used to determine every case, especially in a case where the contract of agency is specific and clear as to the condition upon which commission can be recovered. Nor do we intend to hold that as a general rule it is a part of the agent's duty to enter into a written contract with the purchaser for the sale of the property."

These are only a few sentences from the opinion, but they are sufficient to show that the case from which they are taken differs so widely from this case in every material point that it can not be relied upon here, unless it be to support the agent's case, as we think the opinion does.

There seems to be no case reported in Ohio where the precise question here presented was determined. That is probably due to the fact that the issue here involved is simple, and one in the solution of which the mind at once turns to and dwells upon the principles of justice and fair dealing which lie at the foundation of our system of jurisprudence and which have served as landmarks in its growth and development.

Mrs. Reynolds employed the agent to find a purchaser for her property. The agent found the purchaser, and it was through no fault of the purchaser or agent that the sale was not consummated. Mrs. Reynolds failed to give title and to make a deed. She now says she is not liable for the commission because the contract which the agent procured was unenforceable. Unless the purchaser refused to take the property or she was otherwise prejudiced by the alleged defect in the contract, how can Mrs. Reynolds take advantage of its infirmity? What had that to do with the failure to consummate the sale? The record shows it had nothing to do with it, but on the contrary that it was through the refusal of the owner to comply with her contract that the sale failed. A person can not be permitted to take advantage of his own wrong, and the authorities relied upon by defendant in error do not uphold her contention.

The main case cited and one that seems to be a leading case is that of *Wilson* v. *Mason*, 158 Ill., 304. This was a suit by a real estate broker for his commission for finding a purchaser or effecting a sale. It differs materially from the case at bar. The purchaser, alleged to have been procured, refused to take the property. The validity of the contract, as a matter of course, became an important subject of inquiry. The purchaser procured refused to take the property and the only way he could be compelled to do so was by a suit for specific performance of the contract; hence, the validity of the contract became an element, and a controlling one, in determining the right of the agent to a commission. If the contract was unenforceable the agent had rendered no service of any value to his employer and should not recover. Such were the facts, and so the court decided in that case. But Justice Magruder, who delivered the

opinion, began the discussion on page 309 with some general observations with which the claim of the broker in the instant case are in accord. He says:

"The duty of a broker who is employed to sell real estate, is to find and produce to the vendor a purchaser, who is ready, willing and able to complete the purchase as proposed. This he must do before he is entitled to any commissions. If the vendor rejects the purchaser so produced, the broker is bound to show that such purchaser was willing, ready and able to perform the contract according to the proposed terms. If the principal accepts the purchaser thus presented, either upon the terms previously proposed or upon modified terms then agreed upon, and a valid contract is entered into between them, the commission is earned. In such case, the broker has earned his commission although the sale is never actually completed, if the failure of the purchaser to complete the sale results from the inability of the vendor to make a good title, and without fault on the part of the broker."

In Ohio the cases are few touching even remotely upon the question here presented. It is interesting to note that practically the precise question was decided by the Superior Court of Cincinnati in *Heintz v. Boehmer*, 4 N. P., 226.

While it may be said that this case is not authority and not to be necessarily followed here, it has not been reversed and has remained the law of this state. The syllabus is as follows:

"In a suit for recovery of a commission for the sale of real estate, the failure of the owner to incorporate into the contract with the intending purchaser, found by the agent, provisions which make it binding, does not militate against the agent's right to recover."

And in the opinion, in commenting on an instruction given the court say:

"In any view of the case, this instruction was misleading inasmuch as it was intended to make the right of plaintiffs to recover depended absolutely upon the right of defendant to enforce specific performance against Muhlhauser. But the instruction is clearly erroneous when we consider that plaintiffs

were not employed to effect a binding contract for the purchase of the property, and that the plaintiffs did not in fact act as the agents to defendant's intestate in executing the contract, but that the contract was signed by Maria Agnes Boehmer herself. Her failure to effect a binding contract, can not militate against the rights of plaintiffs, since their duty was performed and their commission earned when they found a purchaser ready and willing to buy, and brought the parties together. The duty of effecting a binding contract then devolved on, and, in fact, was assumed by Maria Agnes Boehmer herself. It was for her and not the plaintiffs, to incorporate in the contract such provisions as would make it binding notwithstanding the existence of the mortgage.

"The court in its general charge to the jury proceeded upon the assumption that the plaintiffs were bound, and, in fact, assumed to execute the contract of sale, and that they could not recover unless a binding contract was made. This was error."

There are many cases in other states bearing upon and upholding the right of the broker to recover in this case. First, we cite *Buckingham* v. *Harris*, 10 Colo., 455; quoting from the syllabus the following:

"A real estate broker is entitled to his commission when he has procured a party ready to purchase on the owner's terms, though he has not made a binding contract for the sale of the real estate with such person."

In *Mooney* v. *Elder*, 56 N. Y., 235, the lengthy syllabus is instructive and pertinent here, but we refrain from quoting from it. We, however, take from pages 241 and 242 of the opinion this apt language:

"The plaintiff was entitled to his commission upon the production of a purchaser ready and willing to purchase the property, although through the default of the defendant a sale was never effected. There was nothing showing but that the contract might have at once been consummated, had the plaintiff been ready to give a deed and put the purchaser in possession. The defendant having declared to the plaintiff that he had sold the property, and when called on to pay the commission based his refusal to pay, not upon the ground that a valid contract for the

sale had not and could not be made, but upon the ground that he had withdrawn the property from market before the sale was made, can not now shield himself from liability on the former ground. Besides, the evidence shows, *prima facie*, that the purchaser was ready and willing to purchase when the verbal contract was made, and there is nothing appearing subsequently in conflict therewith. The court would have been warranted in holding that the commissions then became due, although the conveyance was not made until some time afterward.''

We will refer to but one other case, viz., *Holden* v. *Starks*, 159 Mass., 503, wherein the syllabus is in part as follows:

''If A, acting as the authorized agent of B, makes a contract of sale of B's land to C, who pays to A a part of the purchase money, and who for a long time afterwards is able, ready and willing to take the property and pay for it the price agreed, and is prevented from doing so by B's refusal to carry out the contract, A is entitled to compensation from B for making the sale, although C could not have been compelled to carry out his contract, if he had chosen to set up the statute of frauds.''

This case was tried to a jury in the common pleas court, and counsel for both sides asked for an instructed verdict. The court thereupon withdrew the case from the consideration of the jury and treated the issue as one at law. Thereupon judgment was rendered in favor of defendants. This was error of law, as we have tried to show.

The judgment is reversed, and there being nothing left in the present state of the case but the question of law discussed above, this court will render the judgment that should have been rendered by the court below.

JONES (OLIVER B.), J., and GORMAN, J., concur.