## No. 16,848.

WALKER *v.* CHATFIELD ET AL.

(252 P. [2d] 109)

Decided December 26, 1952.    Rehearing denied January 12, 1953.

Mr. OMAR E. GARWOOD, Mr. MILTON C. GARWOOD, Mr. JOSEPH A. BENJAMIN, for plaintiff in error.

Mr. GEORGE O. BAKKE, Mr. LEO W. KENNEDY, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

THIS is a suit for a commission on the sale of property. It arose when plaintiff, who is plaintiff in error here,

sued defendant, who is the owner of the property covered by the alleged contract of sale. Upon a trial to the court the case was dismissed. Plaintiff is here specifying error, and alleging that the trial court erred in finding that he had failed to discharge the burden of proof that he had earned, and was entitled to, a commission; that he had failed to prove that he had produced a buyer who was ready, willing and able to carry out the contract; further, that the trial court erred in failing to sustain plaintiff in error's motion for summary judgment and in admitting testimony tending to vary, add to, or alter a written instrument.

In his complaint plaintiff alleged that prior to February 23, 1950, defendants Chatfield employed him to sell the business, fixtures and lease of the Sky Village Inn, then owned by defendants, for the sum of $12,500, and that they agreed to pay plaintiff a commission of $1,250. The evidence disclosed that he did obtain the signatures of J. A. Cain and Ruby M. Cain, as proposed purchasers of the property, to a printed form supplied by Walker, in which the inserted terms were dictated by J. A. Cain, reading as follows:

"City of Denver   County of Denver   State of Colorado.
                                    February 23, 1950
"I hereby pay one thousand and no/100 Dollars, ($1000.00) as earnest money and part payment of purchase price of business, fixtures and lease of the Sky Village Inn located at U. S. 285, West of Morrison, Colo. "The full purchase price of above mentioned Sky Village Inn is to be twelve thousand five hundred and no/100 Dollars, ($12,500.00) and I agree to pay for the same as follows:   $1000.00 herewith, $4000.00 cash upon closing, the seller to carry balance of seven thousand five hundred dollars on a note secured by chattel mortgage on said fixtures and lease. This offer is subject to the following conditions only:   Seller is to grant a lease for 5 years with an option of 5 additional years at a rental of $300.00 per month; lease is to include bar, dining room,

cabins and gas pumps; fixtures are to include all fixtures on premises and belonging to said business; interest on said note is to be not more than 5% per annum on unpaid balance; balance is to be paid at $125.00 per month plus interest; my obtaining a liquor license in my name. Seller is to build dance hall according to plans inspected by me and I am to purchase fixtures for said dance hall. Stock of liquors and food held for sale is to be purchased by me at wholesale prices. If each and every condition of this offer is not met by the seller, my deposit is to be returned to me forthwith.

"Should I fail through any cause, or refuse to pay the balance of the purchase price as agreed upon, on or before April 1, 1950, I understand and agree that the earnest money that I have paid shall at the option of Pat Walker be forfeited as liquidated damages.

"J. A. Cain<br>
Ruby M. Cain

"I hereby agree to sell the above described business, fixtures and lease on the terms and conditions as outlined above, and agree to pay a commission of $1250.00 to Pat Walker.

"Walter J. Chatfield<br>
Miriam R. Chatfield."

Having procured the Cain signatures to the main portion of the document, plaintiff then called upon the Chatfields and obtained their signatures to the three line statement, as shown above.

The Chatfields testified that, when they seemed to be slow in adding their signatures, Walker stated "that this paper was to be signed only to get the man's deposit down and that the lease would have to be fixed up later." There then followed discussion as to when arrangements could be made for drawing up the lease.

It is the position of counsel for plaintiff that, having obtained the signatures of the Cains and the Chatfields on the one document and brought the two parties together—the Chatfields as vendors and the Cains as ven-

dees—this entitles plaintiff to a commission of $1250, without the necessity of showing anything more and regardless of whether a deal was actually consummated.

The evidence discloses that a deal never was completed; that the parties subsequently did meet for the purpose of working out the terms of the proposed lease referred to in the agreement, and both sides agree this was necessary to complete the agreement. But the attorney for the purchasers never appeared at the meeting and, although the terms of a lease were discussed, the meeting broke up without a lease either being agreed upon or executed. Subsequently, Mr. Cain stopped payment on the check for $1,000 which he had delivered at the time of his signing the document, with the result that neither of the parties to this litigation ever had the $1,000 cash in hand that was to bind the bargain. Then the Cains indicated they were not interested in doing anything further on the deal but, on the contrary, announced they were through; and before trial had commenced in this case Mr. Cain had died.

The evidence further disclosed that at the preliminary discussions which occurred concerning the lease a question arose, which never was settled, in connection with the obtaining of a liquor license.

The position of plaintiff's counsel is that it was merely necessary for him to introduce the document—which both proposed purchaser and seller had signed—for him to be entitled to his commission, regardless of whether an agreement between the purchaser and the seller ever had in fact been consummated. One objection to this theory is that the document shows on its face that it is incomplete and that at a very minimum there remained a lease to be agreed upon and executed between the parties before it could be said that the parties had reached an agreement. An employee of plaintiff, when his testimony was first taken, in answer to the question, who refused to go through with this transaction? replied, "Mr. Cain." He was subsequently asked by his counsel

whether he wished to make any explanation about that answer. He then stated that after the parties discussed the gambling, Mr. Cain refused to go through with it that way.

The evidence disclosed that originally the Cains thought the fixtures for the dance hall would cost somewhere in the neighborhood of $4,000, whereas it subsequently developed that the cost of the fixtures as ordered by the Chatfields might be more nearly twice that amount. An employee of plaintiff, in charge of negotiations, testified that the amount of $4,000 was not to be paid until the lease had been drawn up. The Chatfields maintained throughout that they had always been ready to proceed along the lines laid down in the agreement, and that they were still ready to perform their side of the undertaking.

■ Counsel for plaintiff rely on the proposition that their client has furnished the vendor with a purchaser ready, willing and able to buy, and their client accordingly is entitled to a commission. *Finnerty v. Fritz*, 5 Colo. 174; *Buckingham v. Harris*, 10 Colo. 455, 15 Pac. 817; *Dunifer v. Pascoe*, 73 Colo. 178, 214 Pac. 392.

The rule upon which they rely assumes a complete agreement as to terms. In the present case, the evidence indicates that there never was a complete agreement. There was a lease to be negotiated. The document itself indicates that *$4,000 cash was to be paid upon closing,* and this stage never was reached. There is no showing that Cain ever was ready, willing or able to make the four thousand dollar payment, or that he ever tendered such payment; and there is no showing he was in a position to obtain a liquor license or ever attempted to obtain one. There is a definite showing that he was not interested in paying for the fixtures for the dance hall which Chatfield already had ordered, when it appeared that their cost would be more nearly $9,000 than $4,000. There is also evidence that Cain lost interest when it developed that Chatfield was interested in providing for

gambling operations and insisting on having a "cut" in them.

We believe, in view of the apparent incompleteness of the transaction and the fact that the document showed evidence of its own incompleteness, that the trial court did not err in allowing evidence explaining the actual situation between the contracting parties; also we are of the opinion that the trial court's general finding in favor of defendants and against plaintiff is supported by the evidence.

This is not a case of the trial court making a new contract for the parties (*Yamin v. Levine*, 120 Colo. 35, 38, 206 P. (2d) 596); but of holding that the parties never had reached complete agreement on all of the terms of a proposed contract.

The judgment is affirmed.