[No. 8346.]

## WEITBREC V. MORRIS.

1. CONTRACT—*Construed.* One employed to *sell* real property does not perform his contract by merely finding a purchaser ready, willing and able to purchase.

2. REAL ESTATE BROKER—*Right to Commissions.* The owner is entitled to know the name of the proposed buyer, and so long as there is uncertainty as to this the broker is not entitled to commissions.

Action by broker for commissions upon the sale of real property, the agency being limited in time, plaintiff alleging a sale to a certain syndicate. A letter and telegram from the agent to his principal announcing a sale to a person named, as representing a syndicate, not

giving the name of any of those composing the syndicate. *Held*, without effect as to the principal. The evidence examined, and held entirely insufficient to establish the existence of the alleged syndicate, or that in fact there was any effectual agreement of any person to purchase the property.

3. ——*Broker's Authority.* Authority to sell real property was limited to a specified day. An agreement of the broker made on the day preceding the lapse of his agency provided that abstracts should be furnished and time allowed to the purchaser to examine them. *Held*, beyond the broker's authority.

4. ——*Agreement of Purchaser.* An agreement to purchase real estate, only in case the title is satisfactory to the buyer's attorney goes for naught if the attorney is not satisfied; if honestly dissatisfied it is immaterial that he ought to be satisfied.

A promise to purchase, "if on examination everything is satisfactory," is without effect.

So an agreement to purchase, subscribed after the agent's authority has expired, and dated as of a day prior to expiration.

5. Evidence—*Presumptions.* There is no presumption that a check upon a bank will be paid on presentation.

Or that a draft upon an individual will be paid on demand.

*Error to Pueblo District Court.* Hon. J. E. Rizer, Judge.

*En banc.*

Mr. M. G. Saunders, Mr. E. F. Chambers, for plaintiff in error.

Mr. John H. Voorhees, Mr. Edward C. Stimson, Mr. Lawrence Lewis, for defendant in error.

Opinion by Mr. Justice Teller.

The defendant in error recovered a judgment against plaintiff in error for $45,000 as a broker's commission on a sale of real estate.

The complaint, in what is designated as a first cause of action, alleges that the defendant, prior to the 3rd day of April, 1909, appointed the plaintiff his agent "to find a purchaser and to sell and dispose of" the 3 R Ranch owned by the defendant; that, on said 3rd day of April, the defendant entered into a written contract as follows:

"Pueblo, Colo., April 3, 1909.

Henry O. Morris,
        Pueblo, Colo.
    Dear Sir:
    I am in receipt of your letter of **March 31st.**

    I undertake not to withdraw the agency for the sale of the property (The 3 R Ranch) from you without giving you at least thirty days' notice.

    The terms upon which the property is to be sold are:

    1.   I am to receive the amount of $80,000 as stated by you, without any commission or other deductions.

    2.   The terms are to be at least $25,000 cash on delivery of deed, deferred payments to be evidenced by notes of substantially even amounts, running not to exceed two, three, and four years, with interest at 6 per cent per annum, payable semi-annually, said notes to be secured by first mortgage trust deed on the property.

    3.   As you are to receive your compensation from the purchaser or purchasers by means of an increased price over the price I am to receive, you are to so conduct all negotiations for sale and transfer of the property as to fully protect me from any and all claims, on the part of said purchaser or purchasers, and agents and other persons who may be interested, or claim to be interested in the sale; and such matters and their sufficiency shall be subject to my approval.

    If this is in accordance with your understanding of our arrangement, please signify the same by signing the statement below.

                        Yours very truly,
                            R. F. WEITBREC,
                            HENRY O. MORRIS.

    The above is a correct statement of our understanding.

                            HENRY O. MORRIS."

It is further alleged that by a subsequent writing the term of said agency was limited to expire at midnight on August 19, 1909; and that, on the 18th day of August, 1909, the plaintiff "found a purchaser for said ranch, the same being and constituting a syndicate composed of S. B. Rohrer, of Topeka, Kansas, J. E. Gaugher, of Rocky Ford, Colorado, W. F. McCafferty, of Pueblo, Colorado, and Hume Lewis, of Pueblo, Colorado, and at said time the said purchasers were ready, able, and willing to purchase said ranch upon the terms as fixed by the said contract of agency, and at the price of $125,000 (the payment of $80,000 of said purchase price to be made upon the terms of said contract of agency); that the fact of the procuring of a purchaser ready, able, and willing to buy said 3 R Ranch, together with the fact that the purchaser was a syndicate, represented by Hume Lewis, of Pueblo, Colorado, was communicated to said Weitbrec on the 18th day of August, 1909," and that said defendant, on the 28th of August, 1909, "refused to carry out said contract of agency, or to comply with the terms thereof," and has ever since so refused, etc., by reason whereof, it is alleged, "the plaintiff has been deprived of the part of the purchase price coming to him over and above the $80,000 to be paid to the said Weitbrec, to his damage in the sum of $45,000."

The complaint contained two other causes of action, but as they were eliminated by the court without objection by the plaintiff, they need not be considered.

The defendant attacked the complaint by motion to separate, which was overruled, and by motion to strike a considerable portion of the several causes of action.

Although the motion was, as to many allegations, clearly well taken, it was overruled.

The defendant then filed a general demurrer to the first cause of action, as well as special demurrers to the

others, all of which were overruled. The defendant answered, admitting the agency, denying that a sale had been made, or a purchaser found, and alleging that the sale agreement with Lewis was not made in good faith, but with the intent to extend the term of the agency.

The trial court, in overruling a motion, made by defendant at the beginning of the trial, to exclude all evidence, on the ground that no cause of action was stated in the complaint, said:

"The court is of the opinion that if there is any cause of action here at all, it is a cause of action for a straight broker's commission, and that all matters, except what goes to establish the affirmative and negative of the duties of a real estate broker under his employment to find within the time limited a purchaser or purchasers ready, willing, and able to buy upon prescribed terms, are outside of the issues of this case; and the court believes that the evidence should be so restricted."

As thus limited to the first cause of action, the complaint, if any cause of action could be spelled out from it, was for damages for breach of contract; and its language, especially the prayer for judgment, shows that it was so intended. And that is the only action which could be brought on the facts alleged. *Gregg v. Loomis,* 22 Neb. 174, 34 N. W. 355.

The plaintiff having pleaded an employment, not merely to find a purchaser, but "to sell and dispose of" the ranch, and having confirmed this allegation by setting out the agency contract of April 3rd, which created an agency to sell, a cause of action was not pleaded by alleging merely the finding of a purchaser ready, willing, and able to purchase. Nothing less than an allegation of an actual sale would make the complaint sufficient. The court erred, therefore, in overruling the general demurrer to the first cause of action.

The court erred, also, in not granting a new trial, for the reason that the evidence showed neither a sale, nor the finding of a purchaser ready, willing, and able to buy, which was necessary on the court's theory of the case. The case was tried upon the theory, suggested by the court, that the plaintiff's cause of action was for a commission for finding a purchaser.

Defendant in error relies upon a contract between himself, claiming to act as agent for Weitbrec, and Hume Lewis, to prove that he produced a purchaser; but an examination of said contract discloses that it purported to be an agreement to sell to Lewis with no reference to a syndicate.

Both the telegram and the letter of Morris' to Weitbrec, informing him of this contract, stated that a sale had been made to Lewis representing a syndicate. The names of the persons constituting such syndicate were not, however, stated, and we have presented to us, therefore, a case in which a claim for a commission is made for producing a buyer, without the vendor's having been advised who the buyer was. In *Gerding v. Haskin,* 141 N. Y. 514, 36 N. E. 601, it was held that the principal is entitled to know the name of the buyer and, so long as there is uncertainty as to that, the broker is not entitled to a commission. In that case, the buyer was a syndicate, but its members were not definitely named to the vendor, and the court held that the vendor, not knowing the purchasers' names, was not liable for a commission.

But the objection to the judgment in this case need not be put on that ground alone.

The evidence shows that only one of the persons named in the complaint as members of the purchasing syndicate, i. e., McCafferty, had signed an agreement to become such a member, at the time the notice was given to Weitbrec of the sale; that is, on August 18th; nor was

it shown that there was at that date a binding agreement of any kind for the purchase.

Gaugher, named in the complaint as a member, never signed anything, nor paid anything; Morris simply said that Gaugher agreed to go into the syndicate. Lewis signed nothing; and Rohrer, who, counsel for defendant in error would have the court believe agreed to make the purchase alone, never, prior to August 20th, agreed to buy anything, or to become a member of the syndicate. The nearest he came to it was in his telegram of August 5th, Exhibit J, in which he says: "On return' will inspect, and if everything is satisfactory, will take three-fifths or all, as per our understanding." This was no agreement to purchase, but a promise to purchase if, on examination, things were satisfactory. On August 20th or 21st, he signed a subscription agreement to contribute three-fifths of the $50,000, proposed to be raised to carry out the deal. This syndicate agreement, signed after midnight of the 19th of August, though dated back to the 18th, was not evidence of an agreement within the time limited for the sale, even though it were otherwise unobjectionable. Nor is there any evidence that the sum of $5,000, recited in the Lewis-Morris contract as paid, was paid at all; if that is important. McCafferty put up his check for $1,000, but it is not shown that the check was good. A draft for $3,000 was drawn on Rohrer on the 18th of August, for which he later substituted his check for said sum, but the evidence does not show upon what bank it was drawn, and, naturally, there is no evidence as to the value of the check. Lewis drew a draft upon an individual, but there is no evidence that it was accepted, or that the individual was able or willing to pay.

The syndicate agreement signed by Rohrer and McCafferty, respectively, provided for payment of the

balance of 80 per cent in one case, and 90 per cent in the other, on demand by Lewis, after his attorneys were satisfied with the title, but not earlier than 30 days after such demand. Manifestly, such an agreement, even if the syndicate had been fully formed within the time limited for the sale, would not constitute a purchase in accordance with the terms offered by the vendor.

The evidence shows that no sale was made for $125,000. McCafferty testified that $1,000 was all he was to pay. The balance of his $5,000 subscription was to be assumed by Lewis. Rohrer was to have $23,000 as a commission, and Lewis $10,000, and was to turn it in on the so-called purchase price, leaving only $12,000 commission to Morris. This, it appears, was to be evidenced by notes, whether secured on the land is not certain, and that $25,000 was to be evidenced by unsecured notes. There is testimony that the notes for $20,000 were to be secured by a second mortgage on the ranch. Who was to have these secured notes does not appear. If the $12,000 coming to Morris was a part of the $25,000 in unsecured notes, it cannot be said that he would have ever in fact received that sum; nor can it be known what part of it he would have received, if any. If it was a part of the $20,000, secured on the ranch, there is the same difficulty; since there is no evidence that the ranch was worth any considerable sum above the $80,000, and the first mortgage might take the entire property. If the defendant in error's position is correct, he would be entitled to recover, not what damages he actually suffered, but such a sum as he had named in this transaction in excess of the vendor's price, regardless of the fact that such excess might not be paid.

The judgment makes the paper profits of the parties real, though they were prospective only, and highly problematical at that.

Again, the Lewis contract provided for a conveyance to him, while the subscription agreement signed by Rohrer required the deed to run to him. Rohrer, then, cannot be regarded as a member of the syndicate which was buying through the Lewis contract, even though there were no difficulty in the fact that he signed after the agency contract had expired.

Further, there is absolutely no evidence as to the ability of any member of the syndicate, except McCafferty, to buy. The testimony falls far short of that required to show such ability and readiness to buy, as would entitle a broker producing a buyer to a commission.

It is further to be noted that the so-called sale agreement made provision for the furnishing of abstracts and for time in which to examine them, all of which provisions were wholly unauthorized by the agency contract of April 3rd.

Every sale, unless otherwise stipulated, is upon the implied condition that the vendor will convey a merchantable title. If he can do that, he may, under proper circumstances, compel performance by the buyer, or recover damages for non-performance. If, however, the vendee is bound to buy only in case the title is satisfactory to his attorney, he is always at liberty to defeat the contract by his attorney's finding that the title is not satisfactory to him. Whether or not a title is merchantable may be determined by the courts; a finding by an individual, where a question is submitted to him for determination, is an act which only he can control. It is binding in the absence of fraud or mistake. 9 Cyc. 617; *Keeble v. Black,* 4 Tex. 69; *O'Reily v. Kerns,* 52 Pa. St. 214.

In *Nofsinger v. Ring,* 71 Mo. 149, 36 Am. Rep. 456, it is held that, in the absence of fraud, the decision of

one agreed upon between the parties to an executory contract of sale to determine whether the goods offered conformed to the requirements of the contract, is binding.

Where a sale is made on condition that the thing sold be satisfactory to the buyer, the rule is, according to the weight of authority, that, if the buyer is honestly dissatisfied, it is immaterial that he ought to be satisfied and that his dissatisfaction is unreasonable; this for the reason that the law will not make contracts for people *sui juris.* 35 Cyc. 220.

We are of the opinion that, upon the facts alleged in the complaint and the facts in evidence, the plaintiff was neither entitled to recover damages for breach of contract, which was clearly his proper action, nor for a broker's commission. He neither sold the property, nor produced a buyer therefor.

For the errors above indicated, the judgment is reversed, and the cause remanded to the District Court with directions to dismiss.

Mr. JUSTICE HILL concurs specially.

Mr. JUSTICE GARRIGUES dissents.

*Judgment reversed.*

---

Mr. JUSTICE HILL concurring specially in the reversal only:

I concur in the conclusion that the judgment must be reversed upon account of the amount of damages awarded to the plaintiff, but I cannot agree that the complaint fails to state any cause of action and for that reason that the action should be dismissed.

GARRIGUES, J., dissenting.

About November 1, 1908, Weitbrec placed his 3 R ranch, including appurtenant water, ditch and reservoir rights, in the hands of Morris, a real estate agent at Pueblo, for sale at $125,000, from which Weitbrec was to be paid $25,000 in cash and $55,000 in notes secured by first mortgage lien on the property, and Morris was to have all the purchase price above $80,000, as his compensation. His efforts to find a purchaser were extensive and March 31, 1909, he wrote Weitbrec regarding the agency, exhibit B:

"My understanding as to my agency for the sale of the 3 R ranch is as follows:

I am the sole agent for the sale of the ranch, on the following terms:

Price of ranch net to you $80,000; terms of sale not less than $25,000 cash when deeds and abstracts are completed, said deeds and abstracts to be furnished by you, balance of purchase price to be secured by notes secured by deed of trust on the entire property, interest on said notes to be 6 per cent per annum. No agreement as to dates of the notes.

The above described agency to be terminated by you at any time, thirty (30) days' notice to be given me of the termination of my agency. You to render me every assistance in your power in furthering of sale with any party or parties furnished by this office: I to make my profit on the above sale above the net sum to you of $80,000. It is understood by you that I am starting this sale at $125,000."

April 3, 1909, Weitbrec answered as follows, exhibit C, called the agency agreement:

"I am in receipt of your letter of Mch 31st.

I undertake not to withdraw the agency for the sale of the property (The 3 R Ranch) from you without giving you at least thirty days' notice.

The terms upon which the property is to be sold are:

1.   I am to receive the amount of $80,000 as stated by you, without any commission or other deductions.

2.   The terms are to be at least $25,000 cash on delivery of deed, deferred payments to be evidenced by notes of substantially even amounts, running not to exceed two, three and four years, with interest at 6 per cent per annum, payable semi-annually, said notes to be secured by first mortgage trust deed on the property.

3.   As you are to receive your compensation from the purchaser or purchasers by means of an increased price over the price I am to receive, you are to so conduct all negotiations for sale and transfer of the property as to fully protect me from any and all claims on the part of said purchaser or purchasers, and agents and other persons who may be interested; or claim to be interested in the sale; and such matters and their sufficiency shall be subject to my approval.

If this is in accordance with your understanding of our agreement, please signify the same by signing the statement below."

To which Morris added over his signature:

"The above is correct statement of our understanding."

April 8, 1909, Weitbrec wrote Morris exhibit D, as follows:

"I find on examination of the records at State Engineer's office that our filings are as follows:

1.   San Carlos Reservoir, by R. F. W. & J. N. C. Aug. 29, '01, 10,178 acre feet.

2.   San Carlos Reservoir, by R. F. W. & J. N. C.
Feb. 13, '02, 17.838 feet.

These are my locations crossing the canyon at the
lower part.

3.   The 3 R Reservoir No. 1 By the South Beulah
Land & Reservoir Co., J. E. Rizer, Secy.   Dec. 11, '03.

The filing was in the interest of Rizer and his asso-
ciates and with our consent.   He will transfer to us if
necessary.   This is the Upper Canon Survey by Kelly &
has capacity of 7439 acre feet.

Kelly's Lower Canon Survey was not filed.

The law has no provision about forfeiture and the fil-
ings are good unless other rights based on more work
and greater diligence intervene.

As I heard nothing from you by phone yesterday
and have had no letter today I assume there are no new
developments.''

May 11, 1909, Weitbrec wrote Morris exhibit E:

''The enclosed is all I can find in State Engineer's
office.   No date in their copy but it is of Dist. Court,
Pueblo.''

The letter contained a memorandum of the water
rights and filings appurtenant to the ranch.

May 17, 1909, Morris wrote Weitbrec exhibit F:

''Mr. Wall has finished the survey of the reservoir
and dam, meaning the reservoir next to the house.   He
has not platted it yet, but will do this work this week.
He seems to be much encouraged, and believes his report
will be favorable.

I received your letter containing copy of the decree
of the St. Charles ditch, and have handed same to Mr.
Dougan.   Everything is in *statu quo* at the present time
until Mr. Wall gets thru his work.   I will keep you
posted.''

July 16, 1909, Weitbrec wrote Morris exhibit H:

"In accordance with your written understanding of April 3, '09, I hereby give you the required notice that your agency for sale of the 3 R Ranch will terminate on the expiration of 30 days from your receipt of this letter.

Please acknowledge receipt by return mail that there may be no misunderstanding between us.

I desire to add that I have no complaint to make of your effort to sell, and what I may be willing to do at the expiration of the 30 days is a matter for consideration then, if you have not sold by that time."

August 10, 1909, Weitbrec was in Morris' office at Pueblo, where the following instrument was signed by them, exhibit K:

"It is understood and agreed between Henry O. Morris and R. F. Weitbrec that the exact time of termination of the agency of Morris for sale of 3 R Ranch is midnight August 19, 1909. Reference is hereby made to Weitbrec's letter to Morris dated July 16, 1909, and Morris' letter to Weitbrec dated July 20, 1909."

Afterwards and during the same day, August 10, Weitbrec delivered to Morris, exhibit L:

"Referring to our conversation today I hereby agree that your agency for sale of the 3-R ranch, as heretofore expressed in writing, shall be extended to midnight August 25, 1909, and without any further notice terminate at that time, instead of at midnight August 19, 1909; provided however that if you consummate a sale after midnight Aug. 19, 1909, and before midnight Aug. 25, 1909, the price to me shall be $90,000 net, free of all commissions and other claims instead of $80,000. All other terms of your agency remain unchanged."

Endorsed by Morris:

"The above complies in all respects with all of our understandings in regard to my agency."

August 13, 1909, after returning to Denver, before starting for Pennsylvania, Weitbrec wrote Morris as follows, exhibit M:

"I shall leave on the Burlington 10 a. m. Sunday instead of 2:50 P. M. and if trains are on time shall be in Chicago 4:30 p. m. Monday and Pgh. 5:30 p. m. Tuesday. I was surprised to find your attitude the other day that of 'putting up to your attorney' the question of who should have any earnest money that might be paid by a purchaser. In our dealings I have not thought it necessary to consult an attorney.

If I have inadvertently allowed you to think that any other terms of payment than those expressed in writing between us would be considered by me, I wish now to correct that impression and to disavow any such intention. I have no opinion as to your authority to collect and keep in your control any earnest money nor of the binding effect of such action.

I have hesitated to write you on this subject, but your remark above alluded to was a distinct shock to me.

Wishing you success in your effort to sell, I am."

August 18th, Morris entered into the following agreement with Hume Lewis, exhibit N, called sales agreement:

"This agreement made and entered into this 18th day of August, A. D. 1909, by and between Henry O. Morris as agent for R. F. Weitbrec, and Hume Lewis.

Witnesseth: That, whereas under and by virtue of a certain agency agreement by and between said Weitbrec, as owner of the Three R ranch, situate in Pueblo County, Colorado, comprising 4,963 acres, more or less, and said Morris, authority is given said Morris to make sale of said property conditioned on the payment by vendee of at least $25,000 in cash on delivery of deed, deferred payments to be evidenced by notes of substantially

even amounts running not to exceed two, three and four years, with interest at 6 per cent per annum, payable semi-annually, said notes to be secured by first mortgage trust deed on the property, and,

Whereas said Lewis hereby agrees to purchase said property under the terms of the said agency agreement and the said Morris agrees to sell the same to said Lewis under the terms thereof, and, whereas said Lewis has paid over to said Morris as said agent the sum of $5,000 as earnest money to be applied by said Morris as said agent as part of a first payment of $50,000 on delivery of deed, receipt of which sum of $5,000 is hereby acknowledged by said Morris as said agent,

Now therefore, it is understood and agreed that the purchase price of said Three R ranch, comprising 4,963 acres, more or less, situate in Pueblo county, Colorado, together with decreed water rights to not less than 26 2-10 cubic feet of water per second from the St. Charles River, together with all that interest in and to the Bryson ditch and the water thereto belonging to the Three R ranch appertaining; ditches, head gates, flumes, reservoir sites, reservoir, flood and seepage water filings, for whatever purposes, standing in the name of R. F. Weitbrec, the owner of the ranch, or in the name of others, which rights have passed to said Weitbrec with the title to the land or have passed to him under other contract or may pass to him, for whatever purposes made, and all other water rights, ditches, headgates, flumes, reservoir sites, reservoir, flood and seepage water filings for whatever purposes, on the St. Charles River owned or controlled by said R. F. Weitbrec or appertaining to said ranch, together with all the buildings, fences and other improvements on said Three R ranch situate and thereto belonging, shall be the sum of $125,000.

That of said purchase price of $125,000 there shall be paid by said Lewis $25,000 in cash and $25,000 in notes acceptable to said Morris on delivery of good and sufficient warranty deed satisfactory to attorneys for vendee, together with such other contracts or agreements as may be necessary to make, to the satisfaction of attorneys for vendee, transfer to vendee of all the rights and interests herein above described;

That of the purchase price of the ranch, $125,000, there shall be deferred payments amounting to $75,000 evidenced by five notes for $5,000 each payable on or before two years after date of delivery and acceptance of deed satisfactory to attorneys for vendee; five notes for $5,000 each payable on or before three years after date of delivery and acceptance of deed satisfactory to attorneys for the vendee; five notes for $5,000, each payable on or before four years after date of delivery and acceptance of deed satisfactory to attorneys for vendee; each and all of said notes to bear interest at 6 per cent per annum, payable semi-annually, each and all of said notes, aggregating $75,000, to be secured by trust deed or deeds on the property;

That in accordance with said agency agreement the said $25,000 in cash is to be paid over by said Morris to said Weitbrec, and the deferred payments mentioned in said agency agreement are to be evidenced by notes of substantially even amounts, running not to exceed two, three and four years, with interest at 6 per cent per annum, payable semi-annually, said notes to be secured by first mortgage trust deed on the property;

That said Morris as said agent shall with all reasonable diligence secure and furnish to said Lewis full and complete abstracts of title in and to said property for examination by attorneys for vendee and such ab-

stracts shall be made to the satisfaction of attorneys for vendee;

That for examination of such abstracts of title by attorneys for vendee said Lewis shall have such reasonable time as may be necessary, it being understood that the said abstracts of title must be sent to attorneys not resident in Colorado;

That when title shall be shown to the satisfaction of attorneys for vendee, good and sufficient warranty deed satisfactory to attorneys for vendee, together with such other contracts or agreements as may be necessary to make, to the satisfaction of attorneys for vendee, transfer of all the rights and interests herein above described shall be prepared and execution and delivery thereof shall be made at the Mercantile National Bank of Pueblo, at which place vendee shall at the same time make his payment and execute and deliver the notes and mortgage herein above described;

That said Morris. agrees to return to said Lewis without deduction the $5,000, receipt of which by him is herein acknowledged, in the event that title and deed, or any of the other contracts or agreements herein above mentioned, are not made to the satisfaction of attorneys for vendee, and on notice by said Lewis to said Morris to that effect.

In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.''

Before this instrument was executed, it was submitted to P. J. Dougan, an attorney at law, for his approval, who replied in writing, exhibit P:

''The contract of sale appears to me to be all o. k. and within the powers conferred on you as agent. The terms appear to be fully and exactly set forth.''

The same day, August 18, Morris sent the following telegram to Weitbrec, exhibit Q:

"Pueblo, Colo., Aug. 18, 1909.
R. F. Weitbrec, care Fort Pitt
    Hotel, Pittsburg, Pa.

I·have this day sold your ranch to Hume Lewis, representing a syndicate. Copy of sale and contract and receipt in mail. Acknowledge receipt."

And the same day mailed the following letter, exhibit R, to Weitbrec in duplicate, one to Denver and one to his Pittsburg address:

"Confirming my telegram of even date reading as follows: 'I have this day sold your ranch to Hume Lewis representing a syndicate. Copy of sale contract and receipt in mail. Acknowledge receipt.'

I beg to advise that the Three R Ranch was sold today to Hume Lewis representing a syndicate. I enclose you herewith a copy of sale agreement which I hope you will find satisfactory. Kindly have proper abstracts prepared furnishing them to me at the earliest possible date."

The copy mailed to his Denver address was received immediately on his return on the 25th and on the 28th, at Pueblo after a conversation with Morris in which he repudiated the sale, Weitbrec wrote him exhibit T, as follows:

"I acknowledge receipt of your telegram of August 18th, addressed to me at Pittsburg, Pa., stating that you had effected a sale of the 3 R Ranch to Hume Lewis, who represented a syndicate. I am also in receipt of your favor of same date addressed to me at Denver, Colo., confirming your telegram, and enclosing copy of contract or option entered into between yourself and Mr. Lewis, in reference to such sale. Your letter and copy of the proposed contract or option was received by me at Den-

ver on the 25th inst., and immediately upon my return from Pittsburg.

In entering into this agreement you exceeded your authority as my agent and have attempted to impose upon me obligations and conditions which you had no right to do and assumed to exercise authority beyond the rights conferred by your agency contract under date April 3, 1909, and the extension thereof.

You are respectfully notified that I decline to recognize the agreement or to be bound thereby, and you will please notify Mr. Lewis and the parties whom he represents of my refusal to confirm your unauthorized acts in the premises.''

At the same time defendant wrote Hume Lewis exhibit Z, as follows:

''I am in receipt of a telegram, also a letter from Mr. Henry O. Morris, advising me that he, assuming to act as my agent, has sold to you, as representative of a syndicate, what is known as the 3 R Ranch, in Pueblo County. Mr. Morris has likewise forwarded to me a copy of an option or agreement which he claims to have entered into with you on my behalf.

You are respectfully notified that Mr. Morris in entering into this agreement exceeded his power and authority as my agent; the contract or option was and, is wholly unauthorized and I shall and do decline and refuse to confirm same or to ratify the acts of Mr. Morris in the matter.

Mr. Morris was constituted my agent to sell the property referred to upon certain limited and restricted conditions set forth in a written statement and as above stated his acts in entering into the contract referred to on my behalf were unauthorized.''

September 30, 1909, Lewis wrote Weitbrec exhibit A-1, as follows:

"I beg to call your attention to the fact that though I have on two separate occasions heretofore made oral demand on you for the abstracts mentioned in the contract of sale, entered into between the undersigned Hume Lewis and Henry O. Morris as agent for you, the said R. F. Weitbrec on the 18th day of August 1909, I have not yet received said abstracts. I hereby make written demand upon you to deliver said abstracts to me, in accordance with the terms of said contract of sale.

The undersigned wishes to notify you, the said R. F. Weitbrec, that he is ready, willing and able and will continue to be ready, and willing to carry out each and every part of said contract of sale of the 18th day of August, 1909, specified therein to be by him performed and that he will hold you, the said R. F. Weitbrec, to a strict performance by you of each and every part of said contract of sale specified therein to be done on your part by you."

Morris claimed that he had, within the time fixed, produced a purchaser ready, willing and able to purchase upon Weitbrec's terms designed in the agency contract, and upon repudiation of the sale, brought this action to recover the $45,000 compensation he claimed he would have earned had the sale been completed. The complaint contains three counts, but the case was submitted to the jury on the first. It alleges in substance that plaintiff is a real estate agent at Pueblo; that Weitbrec owns the 3 R ranch in Pueblo county containing 4963 acres, together with appurtenant water, ditch and reservoir rights; that about November 1, 1908, defendant appointed plaintiff his agent to find for him a purchaser for the ranch. It then sets out the contract of agency dated April 3, 1909, exhibit C, and alleges that plaintiff diligently set about to procure a purchaser and made divers and extensive surveys and incurred large expense in pre-

paring maps and plats, and in advertising the ranch for sale, and entered into negotiations with divers persons, one of whom was Hume Lewis, acting as the representative of a syndicate and the members thereof for the purchase of the ranch; that all such acts relative to the negotiations with Lewis in his capacity as representing a syndicate, and the work being done in presenting the ranch for sale, were communicated to Weitbrec; that for the purpose of definitely fixing the terms and date of termination of plaintiff's agency, a memorandum dated August 10, 1909, (exhibit L), was executed, which is set out in full. It then alleges that August 18, 1909, plaintiff found a purchaser, being and constituting the syndicate represented by Hume Lewis, composed of S. B. Rohrer of Topeka, J. E. Gaugher of Rocky Ford, W. F. McCafferty and Hume Lewis of Pueblo, who at the time, were able, ready and willing to purchase the ranch upon the terms fixed by the owner, at the agreed price of $125,000; that the fact of finding such a purchaser, and that the purchaser was the syndicate represented by Lewis, was communicated to Weitbrec August 18, 1909, by telegram at Pittsburg (exhibit Q), which was received by him the morning of the 19th; that notwithstanding plaintiff had given notice that he had found and produced a purchaser, defendant, on August 28, refused to complete the sale, and stated he would not carry out the contract of agency, and at all times since has constantly refused to complete the sale or convey the ranch to the purchaser; that for a long period of time after producing such a purchaser and upon divers occasions, plaintiff and divers members of the syndicate requested Weitbrec to carry out the contract of agency, and complete the sale and convey the ranch to the purchaser, which he refused to do; that by reason of such failure and refusal, plaintiff has been de-

prived of all the purchase price above $80,000 to his damage in the sum of $45,000.

The second and third counts are like the first with the additional allegation that August 18, 1909, plaintiff entered into a contract of sale (exhibit N) with Hume Lewis, representing a syndicate, which is set out in full.

The *ad damnum* clause recites that by reason of the fact that plaintiff was to receive all the purchase price over $80,000 and by reason of Weitbrec's refusing to complete the sale, plaintiff has been deprived of the profits which he would have received had the sale been completed, to his damage in the sum of $45,000.

The third count alleges that this profit was a vested charge or interest in the ranch, and asks that the sum be impressed upon it as an equitable lien.

Defendant moved to compel plaintiff to separate and separately state the different causes of action, which was followed by a motion to strike some 79 distinct matters. This was followed by a motion to make the complaint more specific in some 42 particulars. After all demurrers and motions had been overruled, defendant answered, which in addition to denials, admits that defendant received the telegram, also the letter containing a copy of the sale agreement.

The answer then alleges that the instrument (exhibit N) was entered into as a result of, and in furtherance of, a conspiracy between plaintiff and Lewis to defraud defendant; that August 28, 1909, he disavowed the sale agreement and repudiated plaintiff's authority to make it; that plaintiff and Lewis placed the document on record to cloud defendant's title, which caused him to commence suit against them to remove the cloud; that they answered in this suit claiming an equitable lien upon the premises by reason of the sale agreement; that upon the trial of that case the court quieted the title as against

any such claim that they or either of them had, which judgment is *res judicata* of all claims of plaintiff now in this suit, and for which reason plaintiff ought not to be permitted to maintain this action.

The replication denies the conspiracy charge, and alleges that the sales agreement was entered into in good faith, for the purpose of consummating the sale; that Weitbrec had been fully advised before of all the negotiations surrounding the proposed purchase of the property by the syndicate represented by Hume Lewis, and with the individual names thereof; denies the former action is *res judicata* as to plaintiff's rights here, for the reason that the decree in the former action specifically provides:

"That the question as to whether the defendants (Morris and Lewis) have, or either of them has, any right to maintain an action on a plain money demand against the plaintiff growing out of the matters and things set forth in the pleadings, is not intended to be and is not determined by this judgment."

Defendant moved to strike some 32 different passages from the replication, and to make it more specific in three particulars, all of which were overruled. Defendant then moved for judgment on the pleadings, which was overruled, and then moved before trial that plaintiff be required to elect upon which cause of action he intended to rely and proceed to trial, which was overruled. Defendant then objected to the introduction of any evidence for the reason that the complaint failed to state a cause of action. In overruling this motion the court remarked:

"The court is of the opinion that if there is any cause of action here at all, it is a cause of action for a straight broker's commission, and that all matters except what go to establish the affirmative and negative of the duties

of a real estate broker under his employment to find within the time limited a purchaser or purchasers, ready, willing and able to buy upon the prescribed terms, are outside of the issues of this case; and the court believes that the evidence should be so restricted. As to the motion to exclude all evidence, it will be overruled."

There was evidence showing that August 4, 1909, in response to a telegram, plaintiff met a prospective purchaser at La Junta, by the name of S. B. Rohrer, who offered to, and was able, ready and willing to purchase the ranch at $125,000 according to the terms of the agency contract, and was prepared and wanted to take all, but consented to Colorado parties coming into the deal with him, on the basis that he was to have 3-5 or more, and he instructed Morris to draw on him for any amount necessary to close the deal. Rohrer requested that the deed from the owner should be taken in his name, and that he would eexcute the notes and trust deed and hold the title for the syndicate until it was ultimately conveyed to a corporation to be formed for that purpose, in which the syndicate members would be entitled to stock in proportion to their holdings. Rohrer was thoroughly familiar with the property, having spent some time before in examining it, and if others did not come in, he agreed to take it all. He was then on his way to Mexico and the next day, August 5, in confirmation of his oral agreement with plaintiff, telegraphed him from El Paso as follows, exhibit J:

"Do whatever necessary to hold deal. On return will inspect and if everything satisfactory, will take three-fifths or all as per our understanding."

On his way back, on the 19th, he telegraphed plaintiff:

"Wire me at Albuquerque if you closed deal for land."

August 10, Weitbrec went to Pueblo where he advised and consulted with plaintiff and Lewis over this purchase, and was informed in detail of plaintiff's conversation with Rohrer; that the property was to be purchased by a syndicate represented by Lewis, composed of Rohrer, Gaugher, McCafferty and Lewis, if Rohrer agreed to the Colorado parties coming in, as he apparently did, but that Rohrer would take all anyway, whether the others came in or not. Rohrer's telegram was shown to defendant, and he wanted to know if that meant to close the deal and was told it looked that way, and to be prepared to furnish abstracts, to which he made no objection and said it would take but a short time to bring them up to date; that he was going to leave the state immediately, and would not be here on the 19th, and he gave plaintiff his itinerary showing that on the 19th he would be at the Ft. Pitt hotel in Pennsylvania. Weitbrec left the state on the 13th, and did not return until the 25th. During his absence, he could only be reached by telegram. He knew before he left that the proposed purchaser was a syndicate, and the names of the individual members thereof; that Lewis was not acting in his individual capacity, but as the agent and representative of the syndicate, and the evidence shows that defendant recognized Lewis as the representative of the members of the syndicate, and knew before he left that the title for convenience was to be taken in the name of an individual who would execute the $55,000 notes and secure them by a first trust deed. Not only had this been discussed between them, but the telegram of August 18 (exhibit Q) informed him that the property had been sold to Lewis representing a syndicate. The letter, exhibit R, received by defendant August 25, containing a copy of the sale agreement, states:

"I beg to advise that the 3 R ranch was sold today to Hume Lewis, representing a syndicatè. I enclose you herewith a copy of the sale agreement which I hope you will find satisfactory. Kindly have proper abstracts prepared, furnishing them to me at the earliest possible date."

That Weitbrec knew and understood that it was not a sale to Lewis individually, but to a syndicate, and that he recognized Lewis as acting in a representative capacity, is further shown by defendant's letters of August 28, exhibits T and Z. In exhibit T to plaintiff, he says:

"I acknowledge receipt of your telegram of August 18th, addressed to me at Pittsburg, Pa., stating that you had effected a sale of the 3 R ranch to Hume Lewis *who represented a syndicate.* * * * You will please notify Mr. Lewis *and the parties he represents* of my refusal to confirm your unauthorized acts."

In exhibit Z to Lewis, defendant says:

"I am in receipt of your telegram, also of a letter from Mr. Henry O. Morris advising me that he, assuming to act as my agent had sold to you, *as representative of a syndicate,* what is known as the 3 R ranch."

Defendant went to Pueblo on the evening of August 27, and the morning of the 28th went to plaintiff's office, where he said to plaintiff:

"I see you claim to have sold my ranch,"
and was again informed by plaintiff that such was the case and that the sale was to a syndicate represented by Hume Lewis. He inquired whether plaintiff's commission notes were to be secured by a first trust deed on his property, and was informed they were not. He then said:

"You have exceeded your authority in this matter and I shall take occasion to consult my attorney,"

and left the office and went to his attorney's office where exhibits T and Z were prepared during the day, and delivered that evening. During this conversation plaintiff again asked Weitbrec for the abstracts. Lewis shortly afterwards on two different occasions demanded the abstracts, which were refused, and September 20, Lewis sent to defendant a letter, exhibit A-1, again demanding the abstracts, and that the sale be completed. Also Rohrer made a personal demand on defendant that he complete the sale, which he refused.

Defendant requested among other instructions, the following:

"1. The court instructs you that in this action the plaintiff is seeking to recover the sum of $45,000, as a liquidated broker's commission, and you cannot render any verdict in his favor for any other sum."

The court instructed the jury:

"1. This is an action instituted by the plaintiff Morris, against the defendant Weitbrec to recover the sum of $45,000, alleged commission by him earned as a real estate broker.

In substance it is alleged in the complaint that some time prior to April 3, 1909, the defendant appointed and constituted the plaintiff his agent to find a purchaser, and to sell and dispose of the property described in the complaint and known as the '3 R Ranch,' and that on said date by a certain written memorandum the terms and conditions of said proposed sale were fixed; and that on August 10, 1909, by further written memorandum it was agreed that the plaintiff's agency should be extended to midnight August 25, 1909, and then to terminate without further notice; but if sale consummated after midnight August 19, 1909, and before midnight August 25, 1909, the net price to the defendant for the property, should be $90,000, instead of $80,000, if before midnight

August 19, 1909; in either event plaintiff to have as commission all in excess of the stipulated net price.

It is then alleged that before the expiration of the time limit, and on, to-wit, August 18, 1909, the plaintiff found as purchasers a syndicate composed of S. B. Rohrer of Topeka, Kansas, J. E. Gaugher of Rocky Ford, Colorado, W. F. McCafferty, and Hume Lewis of Pueblo, Colorado; who were at that time, ready, able and willing to purchase said ranch upon the terms as fixed by said contract of agency, and for the total price of $125,000, and notified the defendant thereof, but the defendant refused to convey the property notwithstanding the alleged finding of such purchasers and request to make such conveyance; by reason of which he lost the amount of the agreed commission in the sum of $45,000, for which he asks judgment.

The defendant answers admitting the agency and the terms and conditions thereof as alleged, and the refusal on August 28, 1909, to convey; but denies that within the time limited the plaintiff procured a purchaser or purchasers who were ready, able and willing to purchase the property upon the terms fixed by the defendant.

And the court instructs you that this is the material question for your determination:

Did or did not the plaintiff, within the time limited, procure a purchaser or purchasers, who were ready, willing and able to buy the property upon the terms fixed by the defendant?

2. That it is immaterial in the trial of this case whether or not Morris had authority to enter into the contract of date August 18th, 1909, known as Exhibit N, and spoken of in the testimony as 'The Morris-Lewis Contract.' If Morris had the right to deal with the property the agreement was of no consequence except that it may be looked to on the inquiry whether Morris found

a purchaser to take the property on the terms as set forth in the agency contract.

3.   The court instructs the jury that if you believe, and find from the evidence that plaintiff was employed by the defendant to sell or find a purchaser for the property described in the complaint, and that in pursuance of such employment, and within the time limited, the plaintiff secured a purchaser or purchasers who were ready, able and willing to purchase the said property upon the terms and conditions fixed by the defendant, and gave defendant notice of such proposed purchaser or purchasers, then the plaintiff's part of the contract was complete and performed and he is entitled to recover the agreed commission although no sale was in fact concluded by the defendant, or he refused to sell for any reason, or if the failure to effect such sale was the fault of the defendant.

4.   You are further instructed that it devolves upon the plaintiff to prove the material allegations of his complaint and as to the finding of a purchaser or purchasers ready, willing and able to buy as alleged therein by a preponderance of the evidence.  By a preponderance of the evidence is not necessarily meant the greater number of witnesses, but such evidence as reasonably satisfies you of the truth of the allegation.

5.   If you believe from the evidence that the plaintiff negotiated a sale of the 3 R Ranch and was to receive his compensation from the purchaser, by means of an increased sale price, and if you believe further from the evidence that the defendant refused to convey, although the proposed purchaser was ready, willing and able to take the property and pay for it under the terms of the agency agreement, the plaintiff is entitled to recover from the defendant the amount the plaintiff would have

received from the intending purchaser as his commission if the defendant had completed the sale.

6. If you find from a preponderance of the evidence that the plaintiff found a purchaser or purchasers ready, willing and able to buy the property upon the terms prescribed by the defendant before midnight of August 19, 1909, then the amount of his recovery would be the difference between the proposed sale price, and the net price of $80,000 going to the defendant as fixed by the agency agreement.

But on the contrary if you find and believe that the plaintiff has failed to establish by a preponderance of the evidence, either that he found such a purchaser or purchasers before midnight August 19, 1909, or that such purchaser or purchasers were ready, able and willing to buy the property on the terms proposed by the defendant, then in either case you should find a verdict for the defendant.

7. The rule requiring a real estate agent to produce a purchaser, etc., in order to be entitled to commissions does not require the agent to exhibit the purchaser in person to the owner. All that is required is for the owner to know and be advised that there is such a purchaser.

8. The right of the plaintiff to recover in this action is not affected by any agreement he may have made regarding the disposition of the amount he was to receive as compensation for his services. An agreement to divide his compensation with the purchaser or purchasers does not defeat his right to a commission in case he otherwise complied with his contract of agency.

9. If you find from the evidence that the proposed purchaser was a syndicate composed of a number of persons, the relations between the members of such syndicate do not concern the owner, if all or any of such members were ready, able and willing to make the purchase

on the terms provided by the owner in the agency contract.

10. The court instructs you that in determining the weight to be given to the testimony of the different witnesses you should take into account the interest or want of interest, if any, they have in the case, their manner on the witness stand, the probability or improbability of their testimony with all the other facts and circumstances before you, which can aid you in weighing their testimony.''

1. It is insisted by defendant that the complaint contains not only three separate and distinct inconsistent causes of action, but that numerous causes of action are mingled, and he asks to have them separated and separately stated.

In my opinion, the complaint contains a single cause of action. A cause of action is defined by Pomeroy, as the facts from which plaintiff's primary right and defendant's corresponding primary duty have arisen, together with the facts constituting defendant's delict. The remedial right springs into being from the breach of plaintiff's primary right by defendant's wrong and in the action relief is sought which is embodied in a judgment. Pom. Rems. & Rem. Rights, 2 ed., secs. 453-454. The alleged causes of action are based upon the same facts, though the forms of statement differ. What defendant calls separate inconsistent causes of action are merely the same cause of action stated in separate counts. They are not counts embodying new and distinct causes of action, based on separate facts, but a statement in different form of a single cause of action.

No doubt new and distinct causes of action differing in fact, must be stated separately. The code requires that the facts constituting the cause of action shall be stated in ordinary and concise language, without unnec-

essary repetition.  Ordinarily, when but a single recovery can be had, there should be but one statement of the cause of action.  Duplicate statements, however, of the same cause of action in different counts are not prohibited and sometimes are permissible.  It appears to be left largely to the trial court's discretion.  *Cramer v. Oppenstein,* 16 Colo. 504, 27 Pac. 716; *Leonard v. Roberts,* 20 Colo. 88, 36 Pac. 880; *Vindicator Co. v. Firstbrook,* 36 Colo. 498, 86 Pac. 313, 10 Ann. Cas. 1108; *Cripple Creek Co. v. Brabant,* 37 Colo. 423, 87 Pac. 793; *Possell v. Smith,* 39 Colo. 127, 88 Pac. 1064; *Manders v. Craft,* 3 Colo. App. 236, 32 Pac. 836; *C. & F. L. Co. v. D. & R. G. Co.,* 17 Colo. App. 275, 68 Pac. 670; *Rucker v. S. & R. Co.,* 18 Colo. App. 487, 72 Pac. 682.

2.  Weitbrec moved for judgment on the pleadings upon the ground:

"That upon the pleadings filed in this case and the statement of counsel for plaintiff made in open court, plaintiff's sole cause of action is for the recovery of money as of a broker's commission,"
which was overruled.  Defendant moved to compel plaintiff to elect upon which count he would proceed, and in passing upon this motion, the court said:

"The court is of the opinion that if there is any cause of action here at all, it is a cause of action for a straight broker's commission, and that all matters except what go to establish the affirmative or negative of the duties of a real estate broker under his employment to find within the time limited a purchaser or purchasers, ready, willing and able to buy upon the prescribed terms, are outside of the issues of this case, and the court believes the evidence should be so restricted."

Defendant asked an instruction to the effect that plaintiff was seeking to recover $45,000 as a liquidated broker's commission.  Instruction No. 1 given by the

court, told the jury that the material question for their consideration was:

"Did or did not the plaintiff, within the time limited, produce a purchaser or purchasers who were ready, able and willing to buy the property upon the terms fixed by the defendant."

The court ruled at the inception of the trial that the action was brought to obtain relief in damages for a broker's commission. On this theory the case was tried and went to the jury upon the issues raised by the first count and the others became immaterial. *Spaulding v. Saltiel,* 18 Colo., 86-88, 31 Pac. 486.

3. I think the first count states a cause of action; that the trial was without prejudice sufficient to work a reversal; that the evidence sustains the verdict; that the instructions correctly state the law; and that the judgment should be affirmed. The oral evidence is conflicting, and I assume that the jury in arriving at the facts relied, where material conflicts occurred, upon plaintiff's evidence, and resolved disputed questions of fact on the trial in his favor. In *Colorado Springs Co. v. Merrill,* 27 Colo. App., at page 383, 149 Pac. 844, it is said:

"Inasmuch as the verdict of the jury has determined the credibility of the witnesses, and the preponderance of the evidence, in favor of plaintiff, the facts necessary for an understanding of the question or questions to be considered must be found in the evidence introduced for the plaintiff, and so much of that introduced by the defendant as is not disputed."

In *Taylor v. Randall,* 3 Colo., at page 401, it is said:

"Sitting as an appellate court, we must assume the truth to be with the evidence that upholds, and not with that which assails the verdict, unless the weight of evidence very strongly preponderates against it."

In *Monarch Co. v. De Voe,* 36 Colo., at page 276, 85 Pac. 633, it is said:

"The motion for a directed verdict admits the truth of plaintiff's evidence and every legitimate inference which might be drawn from it."

When I say the evidence shows that Weitbrec, before he went to Pennsylvania, was familiar with the formation of the proposed syndicate, and the names of the individual members thereof, that he knew Lewis was not acting for himself but in a representative capacity, that he had been told that he was to deed the property to Rohrer for the benefit of those whom Lewis represented, and that he knew when he received a copy of the sale contract on August 25th, that it referred to Lewis in his representative capacity, and not individually, I assume that the jury so found upon conflicting evidence.

4.   Weitbrec left Denver August 13 after a conference with plaintiff and Lewis in Pueblo on the 10th, and went to Pennsylvania.  He returned to Denver on the 25th, and received the letter, exhibit R, containing a copy of the sale agreement; on the 28th, he repudiated the sale.  Lewis then placed the contract on record, and Weitbrec brought an action to remove it as a cloud upon his title.  On the trial of that case, the specific issue was whether the agency agreement of April 3, 1909, exhibit C, gave Morris control over the title, with power and authority to make a contract binding upon Weitbrec.  The lower court on the trial of that issue held that Morris possessed no such authority, but was simply an agent to procure a purchaser, and removed the alleged cloud. That case was brought here for review and will be found reported in 58 Colo. 147 [143 Pac. 1037].  The lower court in its decree said:

"The question as to whether the defendants (Morris and Lewis) have, or either of them has, any right to

maintain an action on a plain money demand against plaintiff (Weitbrec) growing out of the matters and things set forth in the pleadings, is not intended to be, and is not determined by this judgment.''

In that case Weitbrec was represented by the same counsel that represent him now, who in their brief said:

''The only possible issue in the case was as to whether or not Morris had authority to bind Weitbrec by the contract made with Lewis.  *  *  *  This agency agreement recites: That Morris is to have the agency for the sale of the property for the time specified, the price and terms upon which Weitbrec will sell.  *  *  * Aside from the complete negation of any intention to charge the property with a lien, equitable or otherwise, this clause alone is sufficient, under the great weight of authority to show that Morris was merely an agent to procure a purchaser and negotiate a sale, and had no authority to sign a contract of sale.''

In affirming the judgment, we said at page 153, 143 Pac. 1039:

''The judgment of the District Court is affirmed, but in so doing we do not hold that defendant, Lewis, may not have an action for damages. That question is not involved, and as stated in the decree of the trial court, the right of Lewis and Morris, or either of them, to maintain an action on a plain money demand against' the plaintiff, growing out of the transaction set out in the pleadings, is not intended to be, and is not determined.''

The former action was to remove a cloud upon the title caused by filing the sale agreement, exhibit N, in which the judgment below reserved the right to sue for the very relief sought in this action. This action was brought and tried upon the precise theory advanced and contended for by Weitbrec's counsel in the former case,

namely: that Morris was an agent with authority merely to procure a purchaser.

5. The majority opinion, as I understand it, holds that the complaint does not state a cause of action, and that the demurrer should have been sustained. With this view I do not agree. It sufficiently alleges that Weitbrec employed plaintiff, a real estate agent, to sell his ranch; that plaintiff within the time fixed found a purchaser able, ready and willing to buy on defendant's terms, of which he notified defendant within the time limit, and that defendant refused to complete the sale with the purchaser. While the complaint is too long, and contains much inessential matter, it alleges the employment, the procuring within time of a purchaser able, ready and willing to buy upon the owner's terms, who failed and refused to complete the sale, by reason of which it was prevented. If defendant obligated himself to complete the sale in the event plaintiff within the time fixed produced a purchaser, and plaintiff produced such a purchaser of which defendant had notice, and from any cause failed or refused to complete the sale, then he is liable. I think the complaint states a cause of action, no matter how long or how much immaterial matter it contains.

Where a broker employed to sell property at a price and upon terms stipulated by his principal, within the time fixed produces a purchaser able, ready and willing to purchase upon the owner's terms and the owner for any cause fails or refuses to complete the sale, he is liable. *Buckingham v. Harris,* 10 Colo. 455, 15 Pac. 817; *Spaulding v. Saltiel,* 18 Colo. 86, 31 Pac. 486; *Millett v. Barth,* 18 Colo. 112, 31 Pac. 769; *Colburn v. Seymour,* 32 Colo. 430, 76 Pac. 1058, 2 Ann. Cas. 182; *King Powder Co. v. Dillon,* 42 Colo. 323, 96 Pac. 439; *Perkins v. Russell,* 56 Colo. 120, 137 Pac. 907; *Owl Canon Co. v. Fergu-*

*son,* 2 Colo. App. 219, 30 Pac. 255; *Craft Realty Co. v. Livernash,* 27 Colo. App. 1, 146 Pac. 121; *Holden v. Starks,* 159 Mass. 503, 34 N. E. 1069, 38 Am. St. Rep. 451; *Fox v. Starr,* 106 Ill. App. 273; *Gibbons v. Sherwin,* 28 Neb. 146, 44 N. W. 99; *O'Connor v. Semple,* 57 Wis. 243, 15 N. W. 136; *Cavender v. Waddingham,* 2 Mo. App. 551; *Atkinson v. Pack,* 114 N. C. 597, 19 S. E. 628; *Durkee v. Gunn,* 41 Kan. 496, 21 Pac. 637, 13 Am. St. Rep. 300; *Taylor v. Cox,* (Tex.), 16 S. W. 1063.

In *Buckingham v. Harris, supra,* it is held that if an agent employed to sell property, produces a purchaser ready, able and willing to purchase at a price satisfactory to the owner, the latter cannot relieve himself from liability to the broker for commissions, by failure or refusal to complete the sale.

In *Colburn v. Seymour, supra,* it is held that the refusal of the owner to complete the sale according to the contract of agency, renders him liable to the broker for commissions, the same as though the sale had been completed, provided the broker establishes on the trial that the purchaser he produced was ready, able and willing to make the purchase upon the terms stipulated by the owner.

In *King Powder Co. v. Dillon, supra;* it is held that the broker is entitled to his commissions when he produces a purchaser ready, able and willing to purchase upon the owner's terms, and where the completed sale was prevented through failure or refusal of the owner, on account of defective title or other cause, the broker may recover his commission.

In *Craft Co. v. Livernash, supra,* it is held that where the broker produces a purchaser, but the sale is not completed, it does not affect the broker's right to commissions if the failure was the owner's and not the agent's fault.

6. I understand the majority of the court to be of the opinion that no action at all can lie in this case having as its basis a broker's commission, and that the action, if any, must be laid in damages for breach of contract. I think if plaintiff within time produced a purchaser ready, able and willing to buy at the owner's terms, he did all that he was employed to do, and if Weitbrec failed or refused to do what was necessary for him to complete the sale, which prevented its consummation, plaintiff is entitled to his commission the same as if the sale had been completed. What difference does it make whether we call it an action in damages for breach of contract, or an action for a broker's commission based upon a refusal to convey, or an action in damages as and for a broker's commission. Call it what you please, it is based upon a failure or refusal to convey after a purchaser had been produced, which prevented a sale. The name has no significance. It is an action based on the remedial right to recover damages, usually called a broker's commission by all the authorities, for the compensation plaintiff would have received had Weitbrec completed the sale, though strictly speaking it is an action for damages equal to what his commission would have been had the sale gone through. The measure of defendant's liability is what plaintiff would have received out of the purchase price had defendant completed the sale. In my opinion the court committed no error in treating and trying the case the same as an action for a broker's commission.

7. It is contended, however, that in no event can Weitbrec be liable for any claim or commission, because the agency contract specifically so provides. True, it does, but what of that? This provision of the contract releasing him from all liability is based upon the assumption that he would do as he agreed, and perform his con-

tract, and if he had done this he would not be liable.
The action is not based upon his performance, but upon
the violation of his agreement, which, it is alleged, de-
prived plaintiff of the fruits of his performance of the
contract. The measure of defendant's liability in such
a case is the remuneration plaintiff would have received
had defendant performed his contract, and the clause
against commissions becomes of no importance.

If plaintiff within time produced a purchaser able,
ready and willing to purchase upon the conditions and
terms specified of which defendant had notice, and if he
neglected or refused, for any reason to complete the
sale, which except for his fault would have been consum-
mated, then he is liable and the damage is the commis-
sion which plaintiff would have made if the sale had
been completed, and it matters not in such a case what
you call the action or that the agency contract provides
that the owner shall pay no commission. *Cavender v.
Waddingham,* 2 Mo. App. 551; *Atkinson v. Pack,* 114 N.
C. 597, 19 S. E. 628; *Durkee v. Gunn,* 41 Kas. 496, 21
Pac. 637, 13 Am. St. 300; *Craft v. Livernash,* 27 Colo.
App 1, 146 Pac. 121.

8. It is my understanding that the majority of the
court are of the opinion that the plaintiff cannot recover
at all, unless he shows that he completed a sale in all
respects except executing and delivering a deed, or that
he entered into a binding contract of sale. I feel that
we are committed in this case to the doctrine that Mor-
ris was a real estate agent whose authority was merely
to produce a purchaser, and that he was without power
to enter into a contract of sale. Morris had no control
over the title. He could negotiate a sale under his au-
thority and produce a purchaser, but he could not sell
without being given control over the title, and he could
not contract a binding sale without power in writing to

bind the title by contract.   Morris had power to fix the purchase price, and authority to negotiate a sale, and produce a, purchaser, and Weitbrec's duty was to render him every assistance necessary and to complete the sale.   The case of *McCullough v. Hitchcock,* 71 Conn. 401, 42 Atl. 81, meets all these conditions, and many others in this case.   At page 404, it is said:

"A real estate broker or agent, is one who negotiates the sales of real property.   His business, generally speaking, is only to find a purchaser who is willing to buy the land upon the terms fixed by the owner.   He has no authority to bind the principal by signing a contract of sale.   A sale of real estate involves the adjustment of many matters besides fixing the price.   The delivery of the possession has to be settled; generally the title has to be examined; and the conveyance with its covenants is to be agreed upon and executed by the owner.   All of these things require conferences, and time for completion.   These are for the determination of the owner, and do not pertain to the duties and are not within the authority of a real estate agent.   For these obvious reasons, and others which might be suggested, it is a wise provision of the law which withholds from such an agent, as we think it does, any implied authority to sign a contract of sale in behalf of his principal."

In *Buckingham v. Harris,* 10 Colo. 455, 15 Pac. 817, an instruction was prayed, that a real estate agent was not entitled to a commission until he had completed a binding contract of sale.   At page 459, we said:

"Such view is unreasonable; for, if such were the law, a broker could not consummate a sale, or make a binding contract of sale, so as to be entitled to commission, without the owner had vested him with power over the title.   In the general employment of a broker to sell

real estate, no such power is given; it is not necessary, and should not be necessary, to give it, as it would open a channel for confusion and fraud. The owner does not wish to part with the control of his property; simply to obtain the aid of a broker to sell it. He employs a broker to procure a purchaser, retaining in himself the power to make binding contracts and conveyances. The terms of sale are sufficient for the broker. So, in the general employment of a broker, when he procures a purchaser able and willing to buy at the terms stated by the owner, he has performed his part; he has done all he can do, and all he was employed to do. The owner may decline to convey or complete the sale. He may so decline for the reason that he may get more by holding and raising his price, or for any other reason; but this does not and should not relieve him from his liability to pay his broker for his services in procuring a person able, ready and willing to purchase at the terms given, the same as if he had completed the sale.''

If defendant had shown a willingness to render the assistance expressed in the above cases, which it was his duty to do, I apprehend there would have been no trouble in completing the sale.

In this connection it is claimed that plaintiff neither sold nor entered into a contract of sale, therefore he cannot recover; that exhibit N, is not a contract of sale, but a mere option.

It did not require Weitbrec to make a deed upon any condition affecting him, different from the agency contract. It attempted to bind him and the purchaser; the reason it did not bind them, is not on account of its form, or because it was an option, or because it did not correspond, as far as Weitbrec was concerned, with the agency agreement, or imposed other terms upon him; but because plaintiff was not authorized by the agency agree-

ment to enter into a contract binding his principal to convey the title.

9. Because plaintiff exceeded his authority in entering into a contract, does not invalidate his contention that he produced a purchaser. Entering into an unauthorized contract cannot be deducted from his efforts in procuring a purchaser, nor militate against what he did in this behalf. His remedial right is based upon the claim that he produced a purchaser, not upon the contract he made with the purchaser. If defendant failed or refused to complete the sale after a purchaser had, within time, been produced, he would be liable to the agent for the commission notwithstanding the contract could not for any reason be enforced. *Holden v. Stark,* 159 Mass. 503, 34 N. E. 1069, 38 Am. St. 451; *Fox v. Starr,* 106 Ill. App. 273. The sale agreement, exhibit N, was not admitted in evidence because it was binding upon Weitbrec or anyone else, but in corroboration of plaintiff's claim that he had produced a purchaser, and the authorities hold in such a case that it is competent evidence in connection with all the evidence on the trial, looking to the question whether a purchaser was produced. *Owl Canon Co. v. Ferguson,* 2 Colo. App. 219-222, 30 Pac. 255.

10. I think plaintiff was only required to produce a purchaser within the time limit fixed. But I understand the majority of the court are of the opinion that there had to be a completed sale within that time or a contract entered into binding upon the vendor and vendee. Plaintiff was not authorized to make a contract, and this in my opinion disposes of the latter contention. Nothing in the agency agreement requires that a sale shall be completed, or a contract executed within the time fixed. It only requires that a sale shall be negotiated, and that a purchaser within the time fixed shall be produced. More than this, the oral evidence shows the impossibility of

the parties contemplating that the sale should be completed within the time fixed. August 10th, defendant was in conference with plaintiff and Lewis at Pueblo over the proposed sale to this syndicate, in which.he was informed that it looked as though a sale had been or would be reached, and to be ready to furnish abstracts, to which he replied that it would take him but a short time to bring them up to date, but that he was going immediately to Pennsylvania, and would not be here on the 19th and he gave his itinerary showing that he would be in Pittsburg on that date. Notwithstanding he was the only one who could complete the sale, he left, and did not return until the 25th, after the time fixed had expired. It surely will not be contended that he went away for the purpose of blocking a sale. It could not be completed without his assistance and co-operation. He made the completion of the sale within time impossible by his absence and as soon as he returned he repudiated it.

11. I think plaintiff within the time fixed found a purchaser able, ready and willing to buy the property on defendant's terms, of which defendant was notified or had knowledge, and that this constitutes producing a purchaser and that it was not necessary to physically produce him before the owner. *Williams v. Bishop,* 11 Colo. App. 378, 53 Pac. 239; *Ross v. Smiley,* 18 Colo. App. 204, 70 Pac. 766; *Craft v. Liverndsh,* 29 Colo. App. 1, 146 Pac. 121; *Gelatt v. Ridge,* 117 Mo. 553, 23 S. W. 882, 38 Am. St. 683; *McCray v. Pfost,* 118 Mo. App. 672, 94 S. W. 998.

I see in the record sufficient evidence to support a verdict that a purchaser was found, of which defendant was notified within time, and that the sale would have been completed upon defendant's terms except for his refusal to lend the necessary assistance after he returned from Pennsylvania.

12. I do not agree that the purchaser had to make a tender. Who would he make it to? He could not make it to Weitbrec, who was in Pennsylvania, and Morris had no authority to accept money; he was to produce a purchaser. The agency contract calls for the payment to defendant of $80,000, $25,000 in cash and $55,000 in notes on delivery of the deed, and no tender was necessary. More than this, when defendant repudiated the sale and refused to make a deed, no tender was necessary. *Fox v. Starr,* 106 Ill. App. 273.

The agency agreement did not fix the date of payment, and it was not necessary that the purchaser found should have $25,000 in cash when produced which he tendered, and demanded a deed. If the purchaser was able, ready and willing and had the financial ability to make the payment upon Weitbrec's terms, when he performed the conditions precedent required of him, it was all that was necessary. *Lemon v. Lloyd,* 46 Mo. App. 452.

13. The agency contract is silent upon the subject of furnishing abstracts of title, and it is claimed that the sale contract in this regard imposes an additional burden upon Weitbrec not called for in the agency agreement. There is nothing in the agency agreement that it would not be required of him to furnish abstracts. The oral evidence shows that on August 10, which was subsequent to making the contract, he agreed to furnish abstracts. Not only did he subsequently place such a construction on the agreement, and promised to furnish these, but in the absence of an agreement to the contrary, as a mere business proposition, he would be expected, in a sale of this character, to furnish abstracts of title showing that he owned the ranch. Ordinarily, after receiving an abstract, before a sale of such magnitude could be completed, the purchaser would be entitled to a reasonable time for an examination and approval of the title.

The law will assume that it was within the contemplation of the parties that there should be a reasonable time allowed for an investigation of the title. *Owl Canon Co. v. Ferguson, supra; O'Donnell v. Chamberlin,* 36 Colo. 395, 91 Pac. 39, 10 Ann. Cas. 931; *McCullough v. Hitchcock, supra; Craft v. Livernash,* 27 Colo. App. 1, 146 Pac. 121.

14.  It is claimed the sale contract placed additional burdens on defendant, other than the agency agreement. As far as defendant is concerned, I find the sale contract conforms with the agency agreement, and imposed no additional burdens on him, either in the property described, or in the amount, manner, or time of payment, and kind of security. The water, ditch and reservoir rights were part of the 3 R ranch, and under the evidence in this case it would be ridiculous to contend otherwise. The sale contract provides that defendant, in accordance with the agency agreement, on delivery of the deed is to be paid $25,000 in cash, and $55,000 in deferred payments, as mentioned in the agency agreement, evidenced by notes of substantially even amounts, payable in two, three and four years, with interest at six per cent per annum payable semi-annually, secured by first mortgage trust deed on the property. Weitbrec knew the purchaser had agreed to pay $125,000 for the ranch upon delivery of the deed, and that out of this purchase price he was to receive $80,000 without deductions, and that the balance was to go to plaintiff. The sale contract provides that the $55,000 in notes to Weitbrec shall be secured in the manner mentioned in the agency agreement, by first trust deed on the property, at the same time, and as a part of the transaction, plaintiff was to receive out of the purchase price, $45,000 in notes of which $20,000 was to be secured by a second trust deed. Because the sale contract provides that plaintiff is to be

paid $45,000 in notes of which $20,000 is to be secured by a second trust deed, was no deviation from the agency contract and in no manner affected defendant's payment, or his security. He knew the sale price from the start, and knew if plaintiff produced a purchaser he would make a commission or profit of $45,000. If Morris saw fit to take notes evidencing the remuneration for his services, that was of importance to him only, and no concern of defendant's. Defendant was only concerned upon the completion of the sale in receiving his price in the manner stipulated by him, and I think the claim that the sale contract imposed terms upon him in deviation from the agency agreement is unfounded. The plan of sale outlined and discussed with defendant before he went to Pennsylvania shows substantially:

```
Selling price ...............................$125,000
Cash to W. ............$25,000
Def. Pymts to
W. Secured by
First T. D. ............ 55,000      $80,000
                                    ─────────
Unsecured notes
to Morris ............$25,000
Notes to Morris
Secured by
Second T. D. .......... 20,000      $45,000      125,000
                                    ─────────────────────
```

and he knew before he left that Morris' plan was to take the purchaser's notes for his commission.

15. Complaint is made because the court did not submit special interrogatories requested. A jury was not called in to aid the court. This is a law case in which the jury tried the issue. If the issue was defined and presented to the jury by appropriate instructions I see

no necessity for special interrogatories. *First National Bank v. Shank,* 53 Colo. 446-458.

16. Defendant contended throughout the trial and prayed for an instruction that plaintiff was entitled to recover $45,000 or nothing, and the jury took him at his word. Now he assigns as error that the verdict is excessive upon the ground, as I understand it, that plaintiff agreed to give away part of his commission, to be evidenced by these notes. If plaintiff saw fit to do this, I do not think it was a matter that concerns defendant, as long as he received his pay out of the purchase price, upon the terms and in the manner specified in the agency agreement. I think when a case is tried by agreement upon the theory that plaintiff is entitled to a certain liquidated amount or nothing, and defendant prays for such an instruction, and the case is submitted to the jury upon that theory, and the verdict is against the defendant that he cannot claim that it is excessive.

17. A great amount of argument and discussion is made over the syndicate proposition, and it is insisted that it was incumbent upon plaintiff to show that Lewis was authorized in writing to bind each member of the syndicate by his signature to the sale contract.

All the syndicate matters, like the question of the binding validity of the sale contract, are immaterial. The ultimate question is, not the enforceable validity of such matters, or their binding validity upon any one, but whether the purchaser was ready, able and willing to buy. If so, and plaintiff within the time fixed produced such a purchaser, in order for him to recover it is not necessary for him to show that Lewis was authorized in writing to bind each member of the syndicate to the sale contract by his signature. *Holden v. Stark, supra; Fox v. Starr, supra.*

18. When defendant met Morris at Pueblo August 28, he made no objection to the sale **upon the ground** that a purchaser had not been produced, or that he did not know the purchaser's identity, or that the time fixed had expired, or that he did not know to whom he should make a deed. Neither did he object to transacting the business with Lewis in his representative capacity. In fact, none of the grounds now urged were then given. The only reason he gave then for refusing to go forward, was that plaintiff had exceeded his authority in attempting to bind him by a contract, which was true, but immaterial. The matters now urged as grounds for refusing to complete the sale, seem to be an afterthought, "suggested by the pressure and exigencies of the case." *Railway Co. v. McCarthy,* 96 U. S. 267, 24 L. Ed. 693; *Kansas U. L. Ins. Co. v. Burman,* 141 Fed. 835, 73 C. C. A. 69; *Mooney v. Elder,* 56 N. Y. 238; *Duclos v. Cunningham,* 102 N. Y. 678, 6 N. E. 790; *State v. Board County Commissioners,* 60 Neb. 566, 83 N. W. 733; *Ballou v. Sherwood,* 32 Neb. 566, 49 N. W. 790, 50 N. W. 1131; *Putnam Inv. Co. v. King,* 96 Kan. 109, 150 Pac. 559.

19. I find sufficient evidence sustaining plaintiff's contention that he produced a purchaser within the time fixed able, ready and willing to buy, at the price and upon the terms stipulated in the agency contract, and that defendant repudiated and prevented the sale. If the evidence had failed in this regard, or if it was insufficient or unsatisfactory, I would not hesitate in voting to reverse the case. But I have gone over the evidence with unusual care, many times, and find to my satisfaction that it is ample to warrant the jury in finding that the purchaser produced desired and had the financial ability to make the purchase, and that it would have been consummated if defendant had done his duty and

. I do not believe it is our province in such a case to interfere with the verdict.

Defendant's actions and conduct after returning from Pennsylvania do not show that he went to Pueblo with the well formed intention of meeting the purchaser, furnishing abstracts, and rendering every assistance to his agent in the completion of the sale which it was his duty to do. He knew the sale could not be completed without such co-operation and assistance. If he desired to be fair as he now contends, and wished to help along the sale, he would have come forward and offered in good faith his assistance, and shown that he was ready to perform the conditions precedent required of him, and then a failure on the purchaser's part to meet the requirements of the agency agreement would have released him from all liability. To my mind his evident purpose in refusing to complete the sale was to force the purchaser to pay him the extra $10,000, or block the sale. I think the judgment should be affirmed.

Decided January 2, A. D. 1917. Rehearing denied April 2, A. D. 1917.